Pearson, C. J.
 

 If a legacy be given to A, provided he applies for it in six months after the death of the testator, otherwise it shall go to B, and A does not apply within the time, the title becomes vested in B, and the Legislature has no power to extend the time ; for the reason that the testator, by the words of condition and the limitation over
 
 *412
 
 to B, makes a compliance with the condition a part of the
 
 ■essence
 
 of the gift, and being’ a condition precedent, it is not saved, even although the condition becomes impossible by the act of God, or by the act of law; and the title of B is absolute.
 

 But we do not think this principle applies to the right of dower, or that that right is
 
 created
 
 by the act of 1784, with a
 
 condition precedent
 
 that when a husband by his will makes a provision for his wife, she shall within six months, after probate of the will, enter her dissent to the provision made lor her, and that a compliance with this condition is made a part of the essence of the right of dower. On the contrary, we are entirely satisfied that the right existed at common law, and was not created by the act of 1784, and that the effect of the act is to prescribe a limitation in respect to the time in which the right shall be claimed, when the husband has by will made a provision for the wife ; in other words, it is a “statute of limitations,” which in such cases bars the right to a writ of dower, but does not extinguish the preexisting common law right of dower.
 

 The right of the widow of every freeholder to have dower in all of the lands and tenements, of which her husband was seized at any time during the coverture, of an estate to which she might by possibility have had issue capable of inheriting, not only existed at common law, but it was paramount to all other rights, save those of the-crown. Dower attached at the time of the marriage. It was superior to the title of the heir or devisee. It was superior to the claim •of creditors, or of purchasers for value. ~ It was superior to the right of the lord claiming by escheat, and by the statute 6 Edward VI. it is made superior to the right of the Crown by forfeiture, except in the case of high treason. There was no statute of limitations in respect to the right of dower, and after the “ statute of uses ” it was necessary to
 
 *413
 
 pass the “statute of jointures” to prevent widows from keeping their jointures, and also claiming their common law dower.
 

 In the course of time, Courts of Equity assumed jurisdiction to put widows to their election, when provision was made for them by the will of husbands and a claim to dower would disappoint the other provisions of the will, either to give up the right of dower or to release their right under the will. This doctrine of election is put on the ground that it is against conscience to claim under the will and also against it; but there is no limitation as to time, and the widow is entitled to a reference as to the condition of the estate in order to aid her in making the election. See
 
 Mitchener
 
 v. Atkinson, Phil. Eq., 23.
 

 It was found in this State that the right of the widow to claim her common law dower, especially after the estate had been settled up, caused great inconvenience, as well to creditors as to devisees and legatees, and for this reason, and also to avoid the expense of resorting to courts of equity, it was provided by the act of 1784 that a dissent should be entered within six months alter probate, or the right of dower should be barred. This statute answered a good purpose, and there was no objection to it
 
 in ordinary
 
 times, treating it as a “statute of limitations,” for, during the six months, the widow had ample opportunity to inform herself as to the condition of the estate of her husband, and, if she found that she was not as well provided for under the will as by the law, or that her husband’s estate was likely to be insolvent, she could without any reproach to his memory, prefer to take by law, as her dower was not subject to debts. But during the
 
 extraordinary times
 
 which we have had since May 1861, this statute of limitations, if enforced, 'would bear with extreme rigor upon widows. There has been an interruption of the courts, and such confusion generally, that no one
 
 *414
 
 ■could make a safe estimate in regard to the solvency of estates. Moved by considerations of this nature, the legislature in 1863 passed an act providing “ that, in computations ■of time for the purpose of
 
 any
 
 statute limiting any action, or ■any right or rights, or making any presumption as to payment of bonds, or satisfaction or abandonment of any equity, &c.,.the time which had elapsed since 20th May, 1861, and which should elapse up to the close of the war, shall not be counted;” and in 1866, after the close of the war, it passed an act providing that in all such cases time should not be counted up to the 1st January, 1867. We are inclined to the opinion, from the general wording of these two acts, and the obvious policy of legislation during the war and the troubled atate of things which succeeded it, that the statute limiting the time in which widows were required to enter a dissent, comes within their operation, and that time should not be counted from 20th May 1861, up to 1st January 1867, in respect to widows who seek to set up a right of dower at common law; see
 
 Morris
 
 v.
 
 Avery, ante
 
 238, as to the Abatement of suits;
 
 Neely
 
 v.
 
 Craige, ante
 
 187, as to Dormant judgments ; by which it is settled that such ordinances and statutes, during the war and since, “confer no
 
 new
 
 rights, but preserve
 
 existing ones."
 
 We are, however, relieved from the ^necessity of declaring an opinion upon that question of construction,for the Legislature in February 1866, out of abundance of caution, passed an act by which, in express words, wid.ows are allowed further time to dissent, and which embraces ■our case; and in June 1866, the Convention by an ordinance gives further time for a widow to dissent, notwithstanding she may have qualified and acted as the executrix of her husband, thus by a plain and necessary implication recognizing and ratifying the act of February 1866; for, if a widow who has qualified and acted as executrix has a right to enter her dissent and further time is given to her,
 
 afortiori,
 
 
 *415
 
 such further-time is given to widows who have not that objection to encounter.
 

 So we take it to be clear that the act of 1784 was a “statute of limitations,” barring the right of dower, and that the act of February 1866 expressly embraces our case, and will proceed to the last point : Did the Legislature have power to pass the act ? putting out of view the effect of the ordinance of June 1866 to prevent complication.
 

 It is said the Legislature has not the power to interfere with “ vested rights,” and take property from one and give it to another! That is true; but these devisees took the land
 
 subject
 
 to the widow’s common law right of dower. The act of 1784, consulting public policy, limited the time in which widows should set up claim to dower. The power of the Legislature to do so is unquestionable. The act of February, 1866, consulting public policy, provides that the time from' 20th May 1861 up to the passage of the act, shall not be counted. Is not the power of the Legislature to do so equally unquestionable ? There is in this case no interference with vested rights. The effect of the statute is not to take from the devisee his property and give it to the widow, but merely to take from him
 
 a right conferred by the former statute,
 
 to bar the widow’s writ of dower, by suspending the operation of that statute for a given time; in other words, it affects the
 
 remedy
 
 and not the right of property. The-power of the Legislature to pass retroactive statutes affecting remedies is settled. Suppose a simple contract debt created in 1859. In 1862, the right of action was barred by the general statute of limitations, which did not
 
 extinguish the debt,
 
 but simply barred the right of action. Then comes the act of 1863, providing that the time from 20th May 1861 shall not be counted. Can the debtor object that this deprives him of a vested right ? Surely not. It only takes from him
 
 *416
 
 the privilege of claiming the benefit of a former statute, the operation of which is for a season suspended.
 

 So the act of 1784 does not
 
 extinguish
 
 the widow’s common law right of dower, but simply bars her right of action, unless she enters her dissent within six months and makes claim to her right of dower within that time. Then comes the act of February 1866, providing that she shall have further time. Can the devisee object that this deprives him of his land ? Surely not. It only takes from him the privilege of claiming the benefit of a former statute, whereby to bar the widow’s common law right.
 

 In
 
 Phillips
 
 v. Cameron, 3 Jon., 390, the power of the Legislature to pass a retrospective statute is assumed, when the intention to give it a retroactive operation is plainly expressed, and that case went off on the ground that there such was not the intention. In our case, the statute immediately bearing on it, although and the statutes referred to, express the intention as plainly as words can do it.
 

 Judgment reversed. This opinion will be certified to the end, &c.
 

 Per Curiam. Ordered accordingly.