R. S. PULLEN, Ex'r., and others *vs.* J. F. HUTCHINS and others.

The act of 1840. Revised Code, chap. 60, sec. 3, qualifies the maxim "a man must be just before he is generous,' in cases where the donor, at the time of the gift, "retains property fully sufficient and available for the satisfaction of his then creditors." But this modification is confined to gifts *inter vivos*, and in respect to legacies or gifts by will there has been no modification of the maxim. On the contrary, the legislation on the subject tends to a strict enforcement of it.

The assent of an executor to a legacy, before the debts of his testator are paid, is void as to creditors, and if the executor commits a *devastavit* and is insolvent, the loss must fall upon the legatee rather than the creditor.

A legatee cannot avoid responsibility, on the ground that the executor assented and paid the legacy without requiring a refunding bond. The omission to take such bond must be ascribed to collusion, or to gross negligence on the part of the executor, of which the legatee cannot take advantage.

Where a guardian took from an executor his note in payment of a legacy due his wards, which was collected and placed to their credit; *it was held*, that a payment in a note, in the first instance, did not release them from their obligation to contribute *pro rata* for the benefit of creditors.

[*Barnard* v. *Threadgill*, 5 Ire. Eq. 86. Same case, 3 Jones Eq. 62, cited and approved.]

Civil action tried before *Watts, J.*, at a Special Term of Wake Superior Court, 1872.

This action was brought by the plaintiffs as creditors of the estate of John Hutchins, deceased, against J. F. Hutchins personally and as executor, and against J. P. H. Russ and wife, and Russ as guardian of his minor children, legatees, devisees and heirs at law of John Hutchins, deceased, and against the other defendants, Wilder and others, purchasers of the real estate devised. The complaint demands judgment that the defendant, J. P. H. Russ, account for all money received by him in his own right, and as guardian of the infant defendants, from the defendant Hutchins as executor, on account of legacies, and refund the same, to be applied to payment of plaintiff's debts; and that if the funds arising from the legacies be insufficient to pay the debts, the real estate, or so much as may be necessary, be sold for that purpose; for the removal of the executor, appointment of receiver, &c., &c

The facts stated by his Honor are as follows, viz: That John Hutchins, the testator, died in January 1863, having made and published a last will and testament, which was admitted to Probate at February Term, 1863. That John F. Hutchins was appointed executor; that a large amount of property, amply sufficient to pay all debts, legacies and charges of administration, came into his hands, and which has been exhausted in payment of debts, legacies and otherwise, leaving unpaid the plaintiff's debts, to-wit: Judgment due plaintiff Pullen, executor of Penelope Smith for $306,84, obtained in the Superior Court of Wake against the defendant Hutchins, executor, and a judgment due plaintiff Womble for $309.70, with interest &c. That the defendant Hutchins is entirely insolvent. That the defendant Russ, in November, 1863, received from the said executor in payment of a legacy bequeathed to him, the sum of $3,500 in Confederate money. That said John Hutchins died seized of several pieces and tracts of land; a tract in Wake county, containing five hundred acres, adjoining lands of

Fisher and others; a tract on Walnut creek, containing about one thousand acres ; a lot in the city of Raleigh on Newbern street. That the lot in the city of Raleigh, was devised to the wife of J. P. H. Russ, and was sold *bona fide* by him and his wife more than two years after the probate of the will, and the qualification of the executor. That the land adjoining Fisher and others, was devised to the defendant Hutchins, and more than two years after the probate of the will and qualification of the executor, to-wit: at October Term, 1868, this land was sold under various executions against Hutchins, and bought at sheriff's sale by the defendant Russ, at a full and fair price. And the defendant, John F. Hutchins, being in open Court, by A. M. Lewis Esq., his attorney, distinctly declined to enter bond for the further administration of the estate of his testator, and surrendered his executorship.

In addition to these facts, it is stated in the answer of Russ, and admitted, that a legacy of $3,000 was given to his children, and that as guardian, and fearing that the legacy would be lost, he took the note of the executor Hutchins, who had become personally liable, that afterwards suit was brought on this note and the money collected under execution.

The other defendants answer, that they are purchasers of the real estate devised, for value and in good faith, and that they bought more than three years after the death of the testator, and when the estate was supposed to be perfectly solvent and good.

The following are such clauses of the will as are deemed material :

"Item. I give and devise to my daughter Adeline Russ, the lot and houses in the city of Raleigh whereon I now reside, to her and the heirs of her body.

Item. I give and bequeath to my daughter Adeline Russ, and the heirs of her body only, the following named slaves, Ruffin, Harriet, Fannie, Bob, Henrietta and child and Maria.

Item. I give to the children of my daughter, three thousand

dollars in money, to be allowed by my executor to said children equally, to such of the boys as may live to be twenty-one years of age, and to such of the girls as may live to be eighteen years of age, said money to be invested by my executor in good notes or bonds bearing interest, and as the interest accrues annually, to be likewise invested in notes or bonds for the use and benefit of said children.

Item. I give to my daughter, five hundred dollars, to be paid to her by my executor out of any money on hand at the time of my decease.

Item. I give to my son-in-law, John P. H. Russ, the money that I have heretofore advanced to him and now hold his note for, making about two thousand dollars, said notes to be delivered to him by my executor.

Item. I give and devise to my son, John F. Hutchins, all my lands, consisting of different tracts, to him and his heirs forever.

Item. I give and bequeath to my son, John F. Hutchins, all my negroes except those named in the foregoing part of the will."

His Honor gave this judgment.

"It is ordered that ———  ———— be appointed receiver in this action, and that the said J. P. H. Russ pay to the receiver the value of the said sum of $3,500 in Confederate money, paid him by the executor J. F. Hutchins, to be ascertained by the scale established by law, with interest. That the amount so received be applied to the *pro rata* payment of plaintiff's debts.

That the said receiver sell enough of the real estate to pay the outstanding debts of the estate, to be selected by him, as in his opinion will be least prejudical to the rights of the defendants, in the manner prescribed by law, in case of application by administrators to sell realty to pay debts, and report his proceedings to the next Term of the Court.

From this judgment, there was an appeal to the Supreme Court.

*Moore & Gatling* and *R. G. Lewis*, for the plaintiffs.
*Batchelor* and *A. M. Lewis*, tor the defendants.

PEARSON, C. J.   It is a maxim of the common law, " A man must be just, before he is generous." In affirmance of this principle, the stat. 13 Eliz. declares all gifts void, as against creditors. There is no qualification or exception, and a donee could not retain the property as long as a single debt of his donor, existing at a time of the gitt, was left unpaid.   *O'Daniel* vs. *Crawford*, 4 Dev., 197.

The act 1840, Rev. Code, ch. 50, sec. 3, makes a qualification in cases where the donor, at the time of the gitt " retained property, fully sufficient and available for the satisfaction of all of his then creditors." · This modification of the maxim is confined to gifts *inter vivos*.

In respect to legacies, or gifts by will, there has been no modification of the maxim ; on the contrary, the legislation upon the subject tends to enforce a strict adherence to it.

The assent ot an executor to a legacy, before he has paid all of the debts of his testator, is void as to the creditors; for it is a fraud, an act done in violation of the maxim " A man must be just before he is generous."  So long as the executor is solvent, no debt can be left unpaid, for he is liable to the creditors *de bonis propriis*, by reason of the devastavit.  It the executor be insolvent, the loss must fall upon the legatee, rather than upon a creditor ; on the ground that the assent to the legacy was void, as a fraud upon the creditor, and the legatee cannot, with a good conscience, retain the legacy and leave the debts unpaid ; for he is a volunteer and only claims a bounty for which he has paid nothing, whereas a creditor demands a right.   The legatee cannot take benefit by the default of the executor, who is an agent acting in the place of the

testator, and the maxim bears upon the case with full force ; *Barnard* vs. *Threadgill*, 5 Ired, Eq. 86; same case, 3 Jones Eq. 62.

In respect to legatees, there is no such modification of the maxim as is made by the act of 1840, in respect to donees, where the donor retains property enough to pay all of his debts. So the fact, that at the time the executor assented to the legacy he was solvent, and had in his hands assets fully enough to discharge all of the debts of the testator, cannot be allowed the effect of making valid the assent of the executor, as against creditors, and of relieving the legatee from his liability to refund for the payment of debts.

The legislation upon the subject, so far from having a tendency to modify the common law maxim, evinces an earnest desire to secure its enforcement. Rev. Code, ch. 46, sec. 24, requires legatees and distributees to give bond, with two or more able securities, " conditioned that if any debt truly owing by the deceased shall be afterwards sued for and recovered, or otherwise duly made to appear, he will refund his ratable part of such debt out of the part or share allotted to him." If this statute had been complied with, the creditors could, as a matter of course, by action on the bond, have compelled the legatees to refund.

In our case the legatees cannot evade this liability to pay " a debt truly owed by the deceased," on the ground that the executor had assented and paid the legacies without requiring a refunding bond ; for the omission to take a refunding bond must be ascribed to collusion, or else to gross negligence on the part of the executor, of which the legatees cannot take advantage. By doing so, they convict themselves of being *particeps criminis* in a fraudulent evasion of the law, and are checked by the maxim, " No one shall take advantage of his own wrong." Every one will admit, at once, the proposition, " A legatee who has procured the assent of the executor and a payment of the legacy, without giving a refunding bond, can

28

claim no better right to be exempted from the liability to refund, imposed by the common law maxim, than a legatee who has, in order to obtain his legacy, strictly complied with the requirements of the law.

So much of the decree in the Court below, as directs the appointment of a receiver, and the payment to him by J. P. H. Russ of the value of the sum of $3,500 in Confederate notes, received by him of the executor in satisfaction of his legacy, the value to be fixed by the scale of depreciation, is affirmed, subject to a deduction by reason of the further order in respect to the legacy of $3,000 to the infant children of said Russ, received by him as guardian, in January 1869.

The judgment in the Court below makes no mention of this legacy to the children of Russ. In this there is error. It was said at the bar, that this omission was because of the fact, that this legacy of $3,000 was not in the first instance received by Russ, as guardian of his children, from Hutchins as executor, *in money*, but that Russ took his note for the amount of the legacy, which was afterwards made on execution by the sale of the property of Hutchins. We have seen, that had Russ received the legacy from Hutchins in money, the wards would have been liable to refund in payment of debts—how could the fact that he took the note of Hutchings, which was afterwards collected and passed to the credit of the wards, affect their liability to refund? We are not able to see how that could make any difference, unless it be to suggest the idea, that after Hutchings had used the money, Russ agreed to condone the devastavit and take the note of Hutchings, provided no refunding bond was required. However this may be, the fact that the money was ultimately received and passed to their credit, in account with the guardian, put the wards precisely in the same predicament as if their guardian had received the legacy of $3,000 for them in money in the first instance, and had executed a refunding bond as required by law.

The judgment in the Court below will be modified, by add-

ing judgment against J. P. H. Russ, that he pay out of the funds of his wards a ratable part of the legacy received by him, towards the satisfaction of the debts of the plaintiffs. The adjustment of the ratable balances to be paid by the legacy of $3,500, received in Confederate notes, and the legacy of $3,000, received in 1869, to be settled by the clerk, and. unless the amounts be paid within one month after the parties receive a copy of this judgment, execution will issue. That part of the judgment having reference to the real estate is reversed, and the case will stand for further directions in the event that. the debts of the plaintiffs be not satisfied. We are not called upon to express an opinion as to the liability of the land, in the hands of a *bona fide* purchaser from the devisees, after the expiration of two years from the probate of the will, or as to the liability of the devisees personally for the money into which the land has been converted.

A judgment will be entered according to this opinion.

PER CURIAM.                         Judgment accordingly.