THOS. A. DONOHO, Adm'r, *de bonis non* of WILLIE JONES *v.*
DAVID PATTERSON and others.

In 1861, A, the heir-at-law of B, administered on his estate; in 1862, less than two years, A, as heir-at-law, agrees to sell certain lands belonging to the estate of B, to C, receiving at the time the full value for it, but executed no deed for said land until the year 1864.   In an action to sell this land for assets to pay B's debts: *It was held*, that although the agreement to sell in 1762, might have been defeated by B's creditors, the deed to C from A in 1864 for the same land was valid.

*Held, further*, that the Act restraining the heir from selling the land, of his ancestor within two years, Rev. Code, chap. 46, sec. 61, is not a statue of limitation, which was suspended by the act of 1861, chap. 4; nor is it affected by the Act of 1863, chap. 34, which provides that in computations of time for the purpose of applying any statute, limiting any action or suit, or any right or rights, or for the purpose of raising a presumption, &c., the time elapsed since the 20th day of May, which was in the year 1861, or which may elapse until the end of the war, shall be excluded from the computation.

(*Hinton* v. *Hinton*, Phil. 410; *Neely* v. *Craige, Ibid.*, 187; *Morris* v. *Avery, Ibid.*, 238, cited and approved.)

SPECIAL PROCEEDING, to sell real estate for assets, commenced in the Probate Court, and thence regularly carried to the Supe-

rior Court of Person county, where it was tried before his Honor, *Tourgee, J.*, at Fall Term, 1873.

The substantial facts are stated in the opinion of the Court.

The jury having found the issues submitted to them in favor of the plaintiff, his Honor gave judgment condemning the land to be sold for the payment of the admitted debts. From this judgment the defendants appealed.

*W. A. & J. W. Graham*, for appellants, argued :

·Chapter 46, section 61, Revised Code, was not suspended by act of September, 1861. Chap. 10, sec. 18, ratified 11th September, 186–. It is not in the chapter of Limitations. It is replied that it is suspended by act of 10th February, 1863, chap. 34. This is not so if a proper construction is put on the act. But if so, is not this act modified by chap. 6, ratified 14th December, 1863, and to be construed as applying only to contracts and suits in debt, assumpsit or account. Section 2, proviso. If any defendant had a right to take a deed at the end of two years, could the State take away his right, and is not the act of February, 1863, unconstitutional as to him ? Is not the deed of January, 1864, protected by the implied repeal of act of February, 1863, by the subsequent act of December, 1863.

II. Does not *Latham* v. *Bell*, 69 N. C. 135, and *Badger* v. *Jones*, 66 N, C. 305, cover this case ; and can the administrator *de bonis non* proceed without suit upon the former bond. Did not the former bond cover real estate, Revised Code, chap. 46, section 52.

*McCorkle & Bailey*, contra, called the attention of the Court to the following schedule of the several acts suspending the Statute of Limitation and other laws, raising presumptions from lapse of time, &c. :

First extra session, (laws Statute of Limitation,) May 11th, 1861, chap. 16, sec. 8.

●

DONOHO, Adm'r. *v.* PATTERSON *et al.*

Second extra session, (laws Statute of Limitation,) September 11th, 1861, chap. 4, sec. 17.

Session 1862–'3, (laws Statute of Limitation,) February 10th, 1863, chap. 34, sec. 1.

Session 1865–'6, (laws Statute of Limitation,) February 21st, 1866, chap. 50, sec, 1.

Ordinance, Session of 1865–'6, (laws Statute of Limitation,) June 23d, 1866, chap. 19, sec. 20.

Session 1866–'7, (laws Statute of Limitation,) February 12th, chap. 17, sec. 8.

Other suspendatory acts cited as being in *pari materia* and parts of a " family " of statutes. The various " stay-laws" extending time for various purposes.

Session 1862–'3, (perfecting entries,) 1863, chap. 20, sec. 1–2.

Second extra session, (mortgager's right,) 1861, chap. 31, sec. 1.

Second extra session, 1861, (executors and administrators,) 1861, chap. 4, sec. 20.

Session 1865–'6, (executors and administrators) 1866, chap. 17, sec. 11.

Session 1865–'6, (widow's dissent,) 1866, chap. 53, secs. 1–2.

Ordinance, Session of 1865–'6, (widow's dissent,) 1866, chap. 37, secs. 1–2.

And argued : 1st, that the true criterion as to whether resort shall be first had on the administration bond, we submit, is, did personal assets come to the hands of the administrator which he ought to, and could have applied. *Badger* v. *Jones*, 66 N. C. 305 ; *Pullen* v. *Hutchins*, 67 N. C., 428 ; *Hinton* v. *Whitehurst*, 68 N. C., 316.

That circumstance is negatived by the verdict.

As to the argument of Mr. Graham, that the proceeds of the private sale, made by the administrator, constituted assets and is covered by his bond, we submit :

(1.) That it has been decided that real estate does not constitute assets. *Fike* v. *Green*, 64 N. C., 664 ;

(2.) That the sale was not made by Walter Jones, *qua* administrator, for he could only in that capacity sell, pursuant to the act of 1846, but *qua* heirs are ;

(3.) That the bond only covers the assets received by a sale *qua* administrator pursuant to the act, is a judicial sale.

II. (1.) The main defence is that the heir sold within two years.

It should be observed that there is no saving to *bona fide* purchasers, even in the Revised Code or act of 1846. They were expressly protected by the act of 1789, chap. 311, sec. 3, also by Revised Statutes, chap. 63, sec. 16, and the act of 1868–'69, chap. 113, sec. 105. The former acts are repealed by the general provisions in that regard in the Revised Code. When a pertinent provision of a former law is omitted from a revisal thereof, may we not fairly argue *suppressio est exclusio ?*

The general scope of the legislation is to secure to the creditors a secondary fund, not on the one hand by treating the land as assets, nor on the other by construing the descent cast as confering a full *jus disponendi*, but rather in analogy to the case of *Doe on the demise of Baird*, v. *Hall*, 63 N. C. 39, as being in *custodia legis*.

(2.) We also submit, that the sale in 1862 is within the purview of the act. It is a fundamental rule in the construction of statutes, that every word is to be weighed and value given to it if possible. The words in the Revised Code are "sales, conveyances or alienations." Now, in the first act, 1789, chap. 311, sec. 3, the only word used in this connection is "alien," it being a well-settled rule that a word of well-known signification at common law shall, when used in a statute, bear the same meaning in the statute, we find that this word "alien" imported an executed transfer of title. Had the word "sale," in the Revised Code, been alone employed it might fairly have been contended that it was substitutionary, but when used in addition, we submit, that it evinces an intention of the later Legislature to extend the idea, otherwise it is mere surplusage, and no value is given to it.

But we further submit, that the two years specified in the Revised Code is a complete analogy to the three years adverse possession of personal property, or the seven or twenty years of realty with color. It comes within the reason and spirit of the suspendatory acts, a schedule of which accompanies this brief. The legislation touching the suspension of statutes making the lapse of time affect rights, was philosophic in its character—remedial statutes necessitated by the condition of things—and our case comes as fully within the mischief sought to be remedied as any other strictly within its letter.

The penalty denounced against the shedding of blood in the streets is not applicable to the surgeon who opened the vein of one who had fallen down in the street in a fainting fit.

The sick man, who in a storm could not leave his berth, after the ship rides safely into port, shall not be adjudged the cargo, though by the letter of the law it is given to them who in a storm, remain on shipboard.

They, in each case, come within the letter, but are out of the spirit of the law.

So, conversely, our case is within the mischief, if not within the very letter of these remedial acts. *Qui hæret in litora, hæret in cortice.*

Mr. Graham contends that the act of February, 1863, impairs the obligation of the contract. To this we reply, that our citizens had then thrown off their allegiance to the Constitution—were rebels, *flagrante bello*; that strictly speaking, as a legal consequence of rebellion, constitutional legislation, except to preserve life and order, was at an end, and all the laws invoked by him and ourselves has to be validated by a *post-bellum* ordinance. Ordinances 1866, chap. 10, and that ordinace in validating one, validates all.

Rodman, J. The material facts are : Willie Jones died in 1861. At April Term, 1861, of the County Court of Caswell, Walter Jones, who was his only heir, became his administrator. Walter duly administered the personal estate and after-

wards left the State. He was duly removed from the administratorship and the plaintiff appointed administrator *de bonis non.* There are debts of Willie Jones outstanding and unpaid, The plaintiff seeks to have the lands of which Willie Jones died seized sold to pay his debts.

The defence is, that some time in 1862, Walter Jones and his mother, Priscilla, who was entitled to dower, agreed to sell one of the pieces of land to Thomas L. Lea, who then paid him its full value, and as the defendant allege, *bona fide,* and without notice that any debts of Willie Jones were unpaid. In January, 1864, Walter and Priscilla executed a deed of conveyance to said Lea. Some of the defendants are the heirs of Lea, and are in possession of that land.

The other defendant, Patterson, in like manner, in 1862, agreed to purchase from Walter and Priscilla, the lot in Milton, and paid to Walter its full value. He alleges that the agreement was made *bona fide,* and without notice of any unpaid debts of Willie Jones. In October, 1863, Walter and Priscilla executed to him a conveyance for the lot.

1. The question is, are these conveyances valid against the creditors of Willie Jones?

The Revised Code, chap. 46, sec. 61, says: "All sales, conveyances or alienations of any lands of a deceased debtor, made by any devisee or heir-at-law, within two years after probate of his will and qualification of the executor, or letters of administration on his estate, shall be void as to the creditors, executors and administrators of such deceased debtor."

It is urged for the plaintiff, that the agreement for a sale, and the payment of the price in 1862 was equivalent to an executed conveyance, and was therefore fraudulent and void as against him. We concede that. But we think the conveyances executed after the expiration of the two years are not vitiated by the prior invalid agreements. The statute imposed a restriction on the heir. He might sell within the time, but the purchaser would be defeated if creditors appeared. The law requires estates to be settled up in two years, and creditors

who keep back their claim beyond that time, are in laches. Purchasers are entitled to infer that all debts have been paid, and there is no longer any restriction on the power of the heir to sell. Putting the agreements of 1862 aside as non-existent as to creditors, the subsequent sales were valid, unless the plaintiff can maintain his other grounds of exception.

2. It is further urged that the act cited, (Rev. Code, chap. 46,) was a statute of limitations which was suspended by the act of 1861, chap. 4, sec. 18, ratified September 11th. That section is in these wards: "That the operation of *the statute of limitations* be, and the same is hereby suspended so long as this act remains in force."

Now what is meant by "*the* statute of limitations?" There is but one chapter in the Revised Code entitled "limitations," chapter 65. It is confined to prescribing within what times actions shall be brought. It does not contain the enactment making sales by heirs within two years, void as to the creditors of their ancestor, Rev. Code, chap. 46. All the sections of the act of 1861, preceding section 18, relate to the bringing of actions. For these reasons we are of opinion, that the act of 1861 does not apply in the case before us, but is confined to such statutes as limit the time for bringing actions.

3. This brings us to consider the effect of the act ratified February 1863, (acts 1863, ch. 34.) The words, so far as they are material, are as follows: "That in the computations of time for the purpose of applying *any* statute, limiting any action or suit, *or any right or rights,* or for the purpose of raising a presumption, &c., the time elapsed since the 20th day of May, which was in the year 1861, or which may elapse until the end of the present war, shall be excluded from such computation."

In *Hinton* v. *Hinton*, Phil. 410, this act was held to cover the act (Rev. Code, chap. 118, sec. 1) by which widows were limited to six months after probate of the husband's will, within which to dissent therefrom, and the plaintiff was allowed to have the benefit of a dissent made after that time.

In *Neely* v. *Craige*, Phil. 187, it was held that the act of 1863 did not prevent a judgment from becoming dormant upon a failure to sue out execution within a year and a day.

In *Morriss* v. *Avery*, Id. 238, it was held that the act prolonged the time for reviving an action.

All of these cases profess to go on the ground that the object of the act was to preserve existing rights, and not to give new ones.

The distinction between the case of a widow and that of an heir, is this. Chapter 118, Revised Code, says she shall not dissent after six months; that is, in effect, that she may dissent within that time. In effect it confers or secures *a right*, and the act of 1863 preserved and continued that right. Chapter 46, Revised Code, says the heir shall not sell within two years. To give the act of 1863 the construction contended for by the plaintiff, would preserve and continue *a disability*. We think this is a distinction of substance and in principle, and not in terms only, and that the act was not intended to reach the case of an heir.

No injury is done to the creditors of the deceased, nor are they deprived by this construction, of any right. There was no act staying them in sueing the administrator, and if from dilatory legislation, or any cause other than their own laches, they had been unable to get a judgment against the administrator within two years, there can be no doubt that a Court of equity in some way, (it is needless to consider how,) would have preserved their rights against the land. But they made no effort until the rights of the defendants had vested.

It is perhaps proper to say that nothing in this opinion is intended to touch upon the liability of the sureties to the administration bond. Neither they, nor their rights, are before us.

Judgment reversed, and case remanded to be proceeded in, &c.

Per Curiam.                              Judgment reversed.