SADLER GILLESPIE et al. v. R. W. ALLISON et al.

*Partition—Sale for Partition—Remainder—Life Estate—Estate Duranle Viduitate—Construction of Statute.*

1. An estate *durante viduitate* is an "estate for life" determinable upon the widow's marriage, and is within the meaning of the words "life estate" as used in chapter 214, Acts of 1887, relating to the partition of the remainder or reversion in lands.

2. A remainder dependent upon the termination of an estate *durante viduitate* is a vested, and not a contingent remainder.

3. Where the tenant of an estate *durante viduitate* joins with some of the remaindermen for a sale for partition of the lands, section 3 of chapter 214, Acts of 1887, will be satisfied with the payment to her of the interest upon the proceeds of the lands sold until the determination of the particular estate by her marriage or death.

4. A statute giving to remaindermen the right to have partition of lands held in remainder vested before the passage of such statute, is remedial, and, instead of impairing, enlarges vested rights.

This was a special proceeding instituted before the Clerk of the Superior Court of MECKLENBURG County for the partition of the real estate described in the petition.

As ssues of fact and of law were raised by the pleadings, the case was transferred by the Clerk to the Superior Court for trial.

It was agreed that the issues might be heard by his Honor Judge Winston at chambers as of the term of Court.

The rights of the defendants in the real estate described in the petition accrued long prior to the year 1887, to-wit, about the year 1866.

The defendants contended, first, that as the rights of the defendants accrued prior to the act of 1887 the petitioners were in no event entitled to partition; and second, that, as there was an estate *durante viduitate* outstanding, the petitioners, as against the defendants, were not entitled to partition.

There was no contention as to the interest of the parties not having been properly set forth in the pleadings. After argument by counsel for plaintiffs and defendants his Honor rendered judgment as follows:

"That the act in relation to partition (chapter 214, Acts of 1887) was intended to apply, and does apply, to life estates existing at the date of its passage.

"That said act affects the remedy only, and, besides, does not interfere with vested rights and is, hence, constitutional. Finally, that an estate *durante viduitate* is a life estate, and such an one is contemplated by the act aforesaid.

"The Court considers and adjudges that the plaintiffs, life tenant and remaindermen are entitled to have partition of the land described in the partition.

"The Court is further of the opinion, and so adjudges, that as to the lot in the city of Charlotte, on Tryon and Fifth streets, and described as the first tract in the petition, owing to the small quantity of the land and the number of the tenants, actual partition of the same cannot be had without injury to some or all of said tenants in common, and that said land ought to be sold at public auction, as provided in such cases by the statute."

After appointing a commissioner to make a sale, the judgment proceeds:

"The Court is further of the opinion, and adjudges, that the widow is not entitled to have the value of her life estate

determined and paid to her in cash, but that she is entitled only to the interest on the value of her said estate, to be received and paid to her annually. The fund arising from such sale said Commissioner will pay into Court, and the same will be invested and secured to said widow and remainderman in such manner and with such safeguards as the Court shall direct and decree and deem wisest and best for all the parties to this proceeding.

" The Court is further of the opinion, and so considers and adjudges, that the second tract described in the petition as containing sixty acres, is susceptible of actual partition, and directs that actual partition thereof be made between the parties in interest, and to this end J. H. McAden, H. C. Eccles and H. G. Springs are hereby appointed to partition the same among the parties in interest, and that the said Commissioners charge the more valuable portions with such sums in favor of the less valuable portions as may be necessaay to equalize the several portions among the parties, and that the said Commissioners make report of their proceedings in the premises to this Court."

The defendants excepted to the judgment and decree, and appealed therefrom, assigning as error: 1st, that his Honor held that the petitioners were entitled to partition in any event; 2d, that his Honor held that the Act of 1887 was applicable to this cause; and 3d, that his Honor held that the petitioners were entitled to partition, notwithstanding the existence of the estate *durante viduitate.*

*Messrs. Clarkson & Dula,* for plaintiffs.
*Messrs. W. J. Montgomery* and *Walker & Cansler,* for defendants (appellants).

MACRAE, J.: There being no contention as to the interests of the parties in the lands sought to be partitioned or sold for partition, it appears that the petitioner is, by virtue of the

wills of Henry Owens and Jane Owens, tenant of said lands, "so long as she remains the widow of W. A. Owens, that she has sold her interest in one of the tracts to one of the other petitioners, and that the other parties are tenants in remainder of said lands according to their respective rights as set out in the petition and answer. Before the Act of 1887, chapter 214, co-tenants in remainder or reversion had no right to enforce a compulsory partition of land in which they had such estate. *Wood* v. *Sugg*, 91 N. C., 93; *Aydlett* v. *Pendleton*, 111 N. C., 28. The provisions of the above-named act are, substantially—

Sec. 1. That actual partition may be made of part of the land sought to be partitioned, and a sale and partition of the remainder, or a part only of any land held by tenants in common may be partitioned, and the remainder held in common.

Sec. 2. That the existence of a life estate in any land shall not be a bar to a *sale for partition* of the remainder or reversion thereof, and for the purposes of partition the tenants in common shall be deemed seized and possessed as if no life estate existed. But this shall not interfere with the possession of the life tenant during the existence of his estate.

Sec. 3. That in all proceedings of partition for land whereon there is a life estate, the life tenant may join in the petition or proceeding, and on a "note" (this word is an evident mistake and should be "sale") the interest on the value of the share of the life tenant shall be received and paid to such life tenant annually, or in lieu of such annual interest, the value of such share during the probable life of such life tenant shall be ascertained and paid out of the proceeds to such life tenant absolutely.

The life tenant and her assignee, with others who are tenants in remainder, ask for a sale for partition, and as the life tenant has sold her interest in one of the tracts, they ask that the value of an annuity of six per cent. of the proceeds.

of the sale of that tract be paid over to him, and that the other tract be sold for partition and the proceeds divided according to the interest, etc. The other remaindermen are defendants. They contend—

1. That the estate of the petitioner, Alice B. Owens, is not a life estate in the contemplation of the Act of 1887, because the said estate may be terminated by her marriage at any time before her natural life expires.

Estates of this nature are called estates *durante viduitate*, and such are defined to be " estates for life, determinable on her ceasing to be such widow;" during their continuance, freeholds. Coke Litt., 42a; Cruise Dig., 115; 4 Kent, 26; 2 Blackstone, 121.

Such estates being so long known to the law as life estates are within the meaning of the words used in the Act of 1887, as such words are to be taken in their ordinary and legal acceptation.

2. It is contended that the remainders are contingent, and as such the petitioners are not entitled to have partition of the same. But they cannot be contingent remainders either according to the definition of Blackstone or the arrangement of Fearne; for one criterion of all such remainders is that the particular estate may chance to be determined and the remainder never take effect. Now the particular estate is that *durante viduitate;* it may last for the life of the tenant, and it may be determined by her marriage, but in either event the remainder immediately takes effect, for it is invariably fixed to remain to determinate persons after the particular estate is spent. See 4 Kent, 202 *et seq.*, where the definitions both of Blackstone and of Fearne are given of vested and contingent remainders. The remaindermen in our case have a present fixed right of future enjoyment. Their estates are vested. But if they are contingent it does not follow that there could not be partition, unless it be that there is no one before the Court to represent all of the con-

tingent interests. *Aydlett* v. *Pendleton, supra; Overman* v. *Tate,* 114 N. C., 571.

3. It is further objected that it is impracticable in this case to give to the life tenant the choice offered by the Act of 1887, either to have the interest on the value of the life tenant's share, or in lieu thereof the value of such share during the probable life of such life tenant, because the life estate may determine by the marriage of the tenant, and therefore there can be no rule for computing the present value of such estate.

The third section of the statute seems to have been framed to meet such an emergency, and we are of the opinion that the statute will be satisfied by the payment of the interest upon the proceeds of sale of the land sold to the life tenant or her assignee until the determination of the particular estate.

And the second section provides for the actual partition of the other tract, not to interfere with the possession of the life tenant or her assignee during the existence of her estate.

4. The defendants claim that they have vested rights which cannot be impaired or affected by the Act of 1887, passed after such rights have accrued; in other words, that they were remaindermen before 1887, when, by the law of this State, they were not permitted to have partition during the continuance of the particular estate. What vested rights did they have? They were tenants of an estate in remainder, and upon the death or marriage of the life tenant, and not until then, they would be entitled to partition or sale for partition. This new law permits them to anticipate the time for partition and have the same made subject to the interest of the life tenant, which is not to be disturbed, or when the life tenant joins in the petition, as in this case, to have a sale for partition, saving her interest.

It seems to us that instead of depriving the remaindermen of a right, the effect of this statute is in furtherance of the public policy which, as was said in *Overman* v. *Tate, supra,*

discourages the tying up of property and the prevention of its alienation, and gives effect to the general principle that everyone has the right to enjoy his own in severalty. No vested right of property has been disturbed, and, in our view, this is a remedial statute enlarging rights instead of impairing them.

"Statutes are remedial and retrospective, in the absence of directions to the contrary, when they create new remedies for existing rights, remove penalties or forfeitures, extenuate or mitigate offences, supply evidence, make that evidence which was not so before, abolish imprisonment for debt, enlarge exemption laws, enlarge the rights of persons under disability, and the like, unless in doing this we violate some contract obligation or divest some vested right." *Larkins* v. *Saffarans*, 15 Fed. Rep., 147. These principles as to vested rights and retrospective laws are fully discussed in the great and leading case of *Calder* v. *Bull*, 3 Dallas, 386. See also many cases collected in Myers on Vested Rights, ch. 1; *Hinton* v. *Hinton*, Phillips, 410; *Tabor* v. *Ward*, 83 N. C., 294. We hope we shall not be understood as making any reference to *ex post facto* laws, which cannot be made to have a retrospective effect in criminal cases.

This statute differs greatly from that under consideration in *Greer* v. *Asheville*, 114 N. C., 678, where it was sought to give a retrospective effect to an act amending the charter of Asheville, so as to continue in office during good behavior a city marshal who had been elected under the law, as it then was, for a term. Such an act, as was justly said, was to act prospectively only, unless the legislative intent to the contrary was made manifest in express terms.

The right to actual partition only exists where such partition can be made without injury to the parties interested, but the right of sale, in case such actual partition cannot be had, has long existed in this State (*The Code*, sec. 1904),

GILLESPIE *v.* ALLISON.

and has been extended by the Act of 1887 to remaindermen and reversioners.

In our opinion, the judgment appealed from protects the rights of all the parties, and in it there is no error.

No Error.

BURWELL, J. (dissenting): I do not think the act (Laws 1887, chapter 214) was intended to apply to cases such as this. There being no way to ascertain the cash value of the estate of Mrs. Alice Owens, the effect of the decree is merely to convert real estate into money, and not to make any partition whatever of the city lots described in the pleadings or of the funds arising from their sale. I do not think it was the intention of the Legislature to compel these defendants, and others in like circumstances, to run the risks necessarily attendant upon the investment of the fund, or else settle with the particular tenant. I know of no rule by which the fund can be divided, and I do not believe the act applies, unless there can be a division of it according to some rule of calculation recognized by the law. It does not seem to me reasonable to suppose that an act, passed evidently to promote the partition of property, should be called into service to effect the conversion of real estate into money, when no division of the money can be made by the law.