JOHN L. HINTON *v.* BENJAMIN F. WHITEHURST and others.

The personal estate in the hands of an administrator, constitutes the *primary* fund for the payment of the debts of the intestate. By an Act of Assembly 1846, the lands of the intestate, is a *secondary* fund, liable only to be used in the payment of debts, when the primary fund is exhausted.

When an administrator two years after his qualification delivers certain slaves, the only personal estate of his intestate to the next of kin, and took from them refunding bonds, and in a suit against the administrator and heirs at law among whom the lands of the intestate had been divided, upon an old judgment: *Held,* That by the emancipation of the slaves by the sovereign, the condition of the refunding bonds were fulfilled, and that the lands were subjected to the payment of the plaintiff's debt.

CIVIL ACTION, tried at Spring Term, 1872, of PASQUOTANK Superior Court, before *Albertson, J.,* upon the following CASE AGREED.

At Spring Term, 1870, of Pasquotank Superior Court, the plaintiff obtained two judgments one on a bond given by Grandy Harris, as principal, and Davis Whitehurst as surety, and the other on a bond given by the same parties to Jemima Thornton, against Benjamin F. Whitehurst, Adm'r of the said Davis Whitehurst, one of the defendants in this suit. On the trial then had the Court found, " the defendant had fully administered and had no assets; that he had settled the estate of his intestate, and had taken refunding bonds from the next of kin; that the actions had commenced after the expiration of two years from the administration by defendant, and is therefore as to him barred by the statute of limitations, but that the debts exist against the next of kin of the intestate, not being so barred as to them; that the debts were $1,411.29, with interest &c., and $200, with interest," &c. On motion, defendant recovered his costs of plaintiff.

Grandy Harris was solvent until the results of the war made him insolvent, and he has continued to be since that time in insolvent circumstances. At the expiration of two years from his qualification as administrator, Benjamin F.

Whitehurst, one of the defendants, delivered over the property of the intestate, consisting of slaves, to the distributees, (the widow being one,) and took refunding bonds as prescribed by law. The property so delivered was of greater value than sufficient to satisfy the claims, and remained in possession of the next of kin until the said slaves were emancipated by the sovereign. It is admitted that Benjaman F. Whitehurst, the administrator, knew that the bonds sued upon were still outstanding and unpaid at the time he delivered up the property to the next of kin.

The defendant, Benjamin F. Whitehurst's intestate, the said David Whitehurst, died seized and possessed of certain land, which, on a petition for partition, was allotted to his heirs at law, the other defendants in this suit, before 1860, and which has continuously remained in their respective possessions up to the bringing of this action, except that after the judgments obtained as before set out, Forbes and wife, and Wood and wife had sold their several shares allotted to them for valuable considerations. The sale was before the commencement of this action. The plaintiff makes no claim against Benjamin F. Whitehurst individually, but only against him as administrator of Davis Whitehurst.

If, upon the foregoing statement of facts, the Court should be of opinion that the plaintiff is entitled to any relief, judgment should be rendered in his favor for such relief; otherwise for the defendants. His Honor being of opinion with the defendants rendered judgment as follows:

1st. A judgment against B. F. Whitehurst, administrator of Davis Whitehurst, is denied.

2d. Judgment against the lands of the other defendants is denied.

3d. Judgment against the other defendants is denied in this action, the proper remedy in the first instance being upon the refunding bonds.

4th. Judgment against the plaintiff for cost.

From which judgment the plaintiff appealed.

*Smith & Strong,* for appellant.

*Batchelor & Sons,* for defendants.

PEARSON, C. J.   By the common law, the heir is bound
for no undertaking or debt of his ancestor, except covenants
real, warranties, and debts charged on the land by *deed;*
hence, the old form, " For the payment of which I hereby
bind myself and my heirs."

The personal estate is the *primary* fund for the payment
of debts.   An heir who paid a specialty debt, *i. e.* a bond in
which he is expressly charged, had relief in equity, by which
to be subrogated to the rights of a creditor, who had forced
him to pay a debt, and have compensation out of the per-
sonal estate.   This doctrine is treated of in the books under
the head of Marshaling Assets.

By the statutes of this State, the land of deceased debtors
is made liable for all of the debts as a *secondary* fund, in case
the debt cannot be made out of the personal estate, and the
real representative is allowed to make up a collateral issue
with the personal representative, by which to put upon him,
if he applies for license to sell the land for the payment of
debts, or upon the creditors if they seek to charge the land,
because of the default of the personal representative in fail-
ing to apply for license to sell the land, the *onus* of showing
that all of the personal property is needed for the payment
of debts, and will not be enough, so as to show that it is ne-
cessary to resort to the secondary in aid of the primary fund.

The administrator delivered the slaves to the distributees,
taking refunding bonds as required by the statute ; the dis-
tributees kept the slaves until emancipation.   His Honor
was of opinion, that the distributees could be charged on the
refunding bonds for the value of the slaves, and consequently

that the land could not be reached until that fund is accounted for. We think the distributees do account for the slaves, by the fact of their civil death, and that this saves the condition of the refunding bonds.

The refunding bond has this condition, " he will refund and pay his ratable part of such debt out of the part or share allotted to him." Rev. Code, ch. 46, sec. 24.

In reply to a *sci. fa.,* to show cause why execution shall not issue against him for his ratiable part of a debt, the distributee alleges that the share allotted to him, to-wit: the slaves, has been lost by civil death, emancipation, without default on his part. This is good cause, and accounts for the slaves very satisfactorily ; for it was the debt of the intestate, and never was the debt of the distributee, except in respect to the property which is lost, without a *devastavit* on his part.

Suppose a judgment against an administrator fixing him with assets, by reason of a slave, the property of the intestate, in his hands to be administered. Judgment " *de bonis intestatris.*" Execution returned " no goods of the intestate to be found." *Sci. fa.* or debt suggesting devastavit, to charge the administrator " *de bonis propriis ;*" he alleges the death of the slave after the judgment without default in him: This is a good cause. Upon a strict analogy it follows that a distributee, who is bound to refund a ratable part of a debt out of the slave allotted to him, is not bound *de bonis proprius* in the first instance, for it is not his debt except in respect to the property allotted to him ; by selling the property he makes a ratable part of the debt his own, and is chargeable *de bonis proprius,* but if the property dies a natural or civil death before he is fixed by judgment, the condition of his bond is saved.

We concur with his Honor in the opinion that the administrator is not liable. We think the parties to the refunding bonds are not liable ; and our conclusion is, that

the primary fund being accounted for, the debt stands as a charge upon the land in the hands of the heirs.

In respect to the shares of the *femes covert* that have been converted by sale, the husbands are chargeable with a *pro rata* contribution, unless the purchase money is secured for the separate use of the *femes covert,* in which event the fund will be charged.

Judgment below reversed. This opinion will be certified, to the end that judgment may be entered in the Court below, fixing the contribution and other matters of detail.

It is clear that under the old system our case would have been the subject for an original bill to marshal the assets, &c. In no point of view can it be treated as a fit subject for a "special proceeding" before a Judge of Probate for license to sell land to pay debts.

PER CURIAM. Judgment reversed.