\* R. C. BADGER, wife and others v. W. A. DANIEL, Guardian, and
others.

*Guardian and Ward—Settlement of Estates—Refunding Bond—
Purchaser—Surety and Principal.*

1. A judgment obtained against a guardian in 1871 in favor of his
   ward, is *conclusive* evidence against him and the sureties upon his
   bond of the amount of his indebtedness to the ward at that time.

2. Where, in pursuance of a decree, upon final settlement of a testa-
   tor's estate and more than two years after his death, an executor
   paid legacies to parties entitled *without* notice of any outstanding
   debt of his testator and took good and sufficient refunding bonds
   from the legatees ; *It was held,* in an action upon a guardian bond
   to which the testator was surety, that the executor was not liable.

   *Held further,* that the acceptance of a legacy, in such case, does not
   operate to discharge the testator's estate from a liability incurred by
   his suretyship on the bond of the guardian of such legatee, to the
   extent of sums received by the guardian *as guardian ;* but the value
   of the legacy so received and such other sums as may be made out
   of other legatees must be applied to its discharge, before subjecting
   lands in possession of devisees of the estate.

   *Held further,* 1st—That the act (Rev. Code, ch. 46 § 24) in reference
   to refunding bonds is intended only for the benefit of creditors.
   2nd—Where the aggregate penalties of such bonds are sufficient in
   the discretion of the executor to meet debts probably outstanding,
   *it seems,* that he has fulfilled the requirement of the statute.   3rd—
   Where the distribution of a decedent's estate is decreed in a proper
   proceeding for that purpose, the Court should fix the amount of
   penalties of such bonds.

3. Where a legatee (and devisee) executed a refunding bond upon re-
   ceipt of his legacy, and sold and conveyed land devised to him within
   two years after the testator's death ; *Held,* (1) That his surety was
   liable primarily (to the extent of the terms of such bond) as between
   him and the purchaser of the land, for an outstanding debt of the
   testator, whether evidenced by judgment or not.   (2) Such pur-
   chaser holds the land as the devisee did ; *and, therefore,* the convey-
   ance to him is void and the land liable as assets for the payment of

---

\*Smith, C. J. did not sit on the hearing of this case.

the debt ; and if he or the devisee sell, after the two years, his vendee (without notice of the debt and for a valuable consideration) acquires an unencumbered estate, but the same liability attaches to the price paid him, as did to the land. (Bat. Rev. ch. 45 § 156.)

4. Each devisee or heir is liable for the debt of his devisor or ancestor in proportion to the respective values of the land ; and the whole debt to an amount not exceeding the value of the devise to one, may be made out of him, he being entitled to contribution from the others, which may be decreed in an action where they are all parties.

5. And each devisee, heir, &c., is a surety (to the extent of what he receives) for the other sharers in the estate, to the creditors thereof.

6. An executor is not chargeable with the value of slaves destroyed as property by emancipation while in his possession ; nor is a legatee, to whom they were delivered and retained.

7. Where a guardian sold land which was devised to his ward to J for $10,000, and afterwards bought it back from J, paying for it with his ward's money ; and the land was subsequently sold under a decree to re-imburse the ward, and the ward became the purchaser at $8,000 ; *Held,* that the price bid by the ward was a proper credit to the guardian upon the charge made against him for the original price.

8. The liability of a devisee for the payment of the devisor's debt is contingent upon the insufficiency of the personal estate ; and *it was held,* in an action to subject the devised land and before such insufficiency was ascertained, that the plea of the statute of limitations was no defence.

(BYNUM, J. *Concurring :* Remarks upon the decision in *Brown* v. *Pike,* and re-affirms the ruling therein made.)

(*Brown* v. *Pike,* 74 N. C. 531 ; *Stack* v. *Williams,* 3 Jones Eq. 13 ; *Hinton* v. *Whitehurst,* 68 N. C. 316 ; *Bond* v. *Billups,* 8 Jones 423 ; *Strickland* v. *Murphy,* 7 Jones 242, cited and commented on.)

CIVIL ACTION brought upon a Guardian Bond and heard on exceptions to the report of a referee at Fall Term, 1877, of HALIFAX Superior Court, before *McKoy, J.*

This action was brought on the 9th of October, 1871, against the defendant, guardian of the femes plaintiff, and the sureties upon his bond ; it was alleged among other things that in consequence of the failure of the guardian to account, the plaintiffs recovered a judgment for $20,690.44 against him at Fall Term, 1871, and now seek to subject

certain funds and lands in possession of the other defen-
dants to its payment. Answers were filed by defendants
setting up their respective defences, and during the
progress of the cause, it was referred to Thomas N. Hill,
whose report and exceptions thereto necessary to an under-
standing of the case, are as follows :—

The defendant was appointed guardian of plaintiffs in
1855, and executed a bond with sureties. The defendant
and his sureties are insolvent, except Andrew Joyner,
surety, who died in September, 1856, leaving a last will and
testament, appointing defendant B. F. Moore and another,
executors (Moore being now sole executor), and devising
lands and bequeathing personal property to his son Henry
Joyner, to his daughter Mrs. Austin and her children (the
femes plaintiff), to his daughters Mrs. Eppes and Mrs.
Daniel, and to Robert O. Burton and his children (who are
the grand-children of testator, and upon the death of either
before arriving at the age of twenty-one years, or without
issue, it was provided that his share should be equally
divided among the survivors). He made certain advance-
ments of personalty during his life time; and in respect to
the slaves in his possession for distribution he provided in
his will that the rates of valuation fixed in a schedule
annexed thereto, should be observed, and upon a petition
filed by his legatees in November, 1856, for a division of
the slaves, the executor delivered them over to the parties
entitled, in pursuance of the order of the Court; and they
were retained by the legatees until they were emancipated.
In November, 1858, the legatees filed a petition against the
executor for a final settlement of the estate, and he distri-
buted the same under a decree made in February, 1859;
paying to said Daniel as guardian of plaintiffs, and to the
other legatees, or their guardians, considerable sums of
money, and taking from each a good and sufficient refund-
ing bond conditioned that in case any debts truly owing by
said Andrew Joyner be sued for, or otherwise duly made

to appear, each party should refund a ratable part of the same out of his or her share of the estate; Henry Joyner executing one of these bonds with the defendant, H. J. Hervey as surety, who is now solvent. Said Henry is now deceased and the defendant, W. H. Day, is administrator.

For about twenty years previous to the death of Andrew Joyner, the defendant Moore (executor) was his attorney, and their relations were of a friendly and social character, and said defendant had ample means of knowing and in fact did know his habits of business. The said testator was regarded by the public, and by said defendant was known to be a man of unusual prudence in the management of his financial affairs. At the time of the settlement of the estate as aforesaid, the defendant executor had no knowledge or cause to believe that his testator was surety on said guardian bond, or in any other manner; the defendant guardian at that time was the owner of a large real and personal estate, and solvent. After the qualification of the defendant, as executor, he advertised for creditors as required by statute (Rev. Code, ch. 46. § 22) and in his answer he claims all the protection to which he is entitled by reason of such advertisement.

The plaintiffs in their complaint demanded judgment against the defendant executor for the amount of the said judgment; and that the land devised to the said grandchildren (Burton's) be sold, and the proceeds thereof together with the amount which may be recovered against the defendant Hervey as surety to the refunding bond of Henry Joyner deceased, be applied to the *pro rata* payment of said judgment, &c.

By eliminating the additional facts and conclusions of law as found by the referee, and arranging them in the order in which they are discussed in the opinion, they are as follows:—

1. At Fall Term, 1871, upon the report of a commissioner

theretofore made, filed and confirmed, it was adjudged by the Court that the defendant, W. A. Daniel, was indebted to the plaintiffs (in various sums) being the proceeds of lands of his wards sold by him as their guardian, and not converted by said wards into personalty; and it was further adjudged, upon application of the plaintiffs to the Court for that purpose, that the sums bid by the plaintiffs (they being the purchasers at said guardian sale) should be invested in the purchase of said land, and that deeds be executed by said commissioner to the plaintiffs, according to their respective shares in the fund; and after crediting the sums so paid, there was judgment against the guardian for other large amounts in favor of the plaintiffs.

Upon these facts the referee held that said judgment concluded all of the defendants as to the debt and default of the defendant guardian; but so much thereof as was rendered on account of the purchase money for the land, was extinguished by the election of plaintiffs to follow the land, leaving a balance of $12,916.53, to which the plaintiffs are entitled according to their respective interests therein. Defendants excepted.

2. The refunding bonds executed by the legatees to the executor were, when taken, (Feb. 23, 1859) good and sufficient as to the amount of the penalties thereof, and the sureties thereto; and the referee held that the plaintiffs were not entitled to recover against the executor. Defendants Burton and Whitfield excepted, for that, the referee exonerates the executor from all liability; whereas by reason of his failure to take proper measures to lessen the liability of his testator as surety upon said guardian bond, and by reason of his paying over to the plaintiffs while said liability existed, he is chargeable with any debt to the plaintiffs arising from said suretyship.

3. The defendant, H. J. Hervey, was surety upon the refunding bond of the legatee Henry Joyner; and the referee

held that he was liable for a certain proportionate part of said judgment, but was not liable on account of the distribution of the slaves retained by the legatee until emancipation, except for the ratable portion of the value of one, sold by his principal. Defendant Burton excepted.

4. The said Henry Joyner, during his life time, conveyed the land, devised to him by the will, to the defendant Whitfield on the 1st of March, 1857, less than two years after the testator's death; and the referee held that the conveyance was void, and the land liable as assets in the hands of its present proprietor to the claim of the plaintiffs. Defendant Whitfield excepted.

5. The defendant Burton excepted (2) because the referee did not hold that the devises and bequests to plaintiffs by the testator, and their acceptance of the same, constituted a release of all liability of the testator by reason of his said suretyship.

6. The defendant Burton in exception 6 insisted that the referee erred in including in said balance alleged to be due plaintiffs, the funds received by the guardian after the marriage, or arriving at full age, of the femes plaintiff; whereas said guardianship terminated on the dates of marriage, &c., and defendants are not liable for any default of the guardian, thereafter.

7. Exceptions 3, 4, 5, of Burton,—for that the referee did not credit the amount due by the guardian to his wards with the amount of real and personal property received by the wards from the estate of Andrew Joyner; for that, in the sum as fixed by said judgment, is included the personal property derived by the femes plaintiff from said estate; and for that, the referee erred in not taking an account of said estate and charging the plaintiffs with what came into their hands with compound interest, in exoneration *pro tanto* of said Joyner's estate.

8. Defendant Burton in exception 12 insisted that the

ruling of the referee was erroneous upon his finding, as follows: That a judgment was recovered at Fall Term, 1871, against defendant Burton for a foreclosure and sale of that portion of the lands of the testator, Andrew Joyner, which was devised to him, and which he had conveyed (in 1870) to secure a certain debt. Upon the sale by the sheriff, the land was conveyed to the purchaser, and the proceeds credited on the debt. The mortgagee (the defendant, Bockover,) who was also the purchaser at said sale, was subsequently made a party to this action. There was no evidence that Bockover ever had actual notice of plaintiffs' claim; but his attorney in his suit against Burton, knew of said claim by reason of being also the attorney of another party defendant in this action. The defendant Bockover was a *bona fide* purchaser for value, after the expiration of two years from the testator's death, and has a valid title to the land bought as aforesaid without notice of the claim of plaintiffs; whereas as the defendant contended, said deed was made to secure an antecedent debt, and after notice to the mortgagee by his attorney.

9. Exception 14 of defendant Burton,—for that, the referee has not credited the debt found by him to be due the plaintiffs with the sum of $15,000 found by him to be the value of the "Graham tract" of land in 1871, at the time of the purchase by plaintiffs. The facts in respect to this transaction are embodied in the opinion. See also paragraph 1, *supra*.

10. The defendant Burton excepted (13) for that, the referee held that the plea of the statute of limitations was not a good defence.

The report of the referee was modified and sustained, and a decree made declaring the respective amounts due plaintiffs, and the respective liabilities of defendants, and appointing a commissioner to sell the land devised to certain devisees; and the cause was retained for further orders.

BADGER *v.* DANIEL.

From which judgment the defendants appealed.    (See same case, 77 N. C. 251.)

*Messrs. J. M. Mullen* and *Walter Clark,* for plaintiffs.
*Messrs. R. O. Burton, jr., S. Whitaker, J. B. Batchelor* and *Gilliam & Gatling,* for defendants.

RODMAN, J.    1. The first exception to the report of the referee is joined in by all the defendants; it is that he admitted the judgment recovered against the guardian Daniel in the Court of Equity for Halifax county at Fall Term, 1871, as *conclusive* evidence of the amounts then owing by the guardian to his several wards and excluded evidence tending to impeach it as erroneous.

By the terms of the reference the referee was authorized to state the indebtedness of the guardian to his several wards "as it may appear upon any judicial proceedings theretofore had between them (obviously alluding to the judgment aforesaid); *or* upon a statement of the guardian account without reference to such judicial proceedings." The referee being of opinion that the judgment was conclusive did not state an account independently of that. He probably felt bound by the decision in *Brown* v. *Pike,* 74 N. C. 531, as did the Judge who confirmed his report in this respect.

The decision was earnestly questioned by *Mr. Batchelor* for the defendants, and we were requested to reconsider it. We have done so, and the majority of the Court are of opinion that the decision was right.    Individually, I think otherwise, and that the words "in like manner," do not mean "with the same force and effect," but are surplusage. This exception is overruled.    While the exceptions of Burton and Whitfield respectively raise the same questions, or nearly so, they do so in a different order and without regard to any dependence of the questions on each other.    It

will be more convenient, therefore, instead of taking the questions up in the order adopted by either of them, to take them as nearly as is convenient in what would seem to be something like their natural succession.

2. (Exception 8 of Burton and 2 of Whitfield) Moore the executor of Joyner is liable for the debt to plaintiffs, because having paid off all debts of his testator except the present one, after the expiration of two years from his qualification, he delivered to the several legatees their slaves, without taking any refunding bonds; and their other personal legacies, taking refunding bonds in penalties less than the value of the legacies, but in the aggregate exceeding the amount of the plaintiffs' claim. It is admitted that except as to the amount of penalty the bonds were sufficient.

The act (Rev. Code, ch. 46, § 24) requires an executor at the end of two years &c., to pay over to the legatees the sums properly payable to them, taking from them bonds with two or more able sureties, conditioned &c. The amount of the bond is not prescribed, but is apparently left to the discretion of the executor. As this act is intended only for the benefit of creditors and is to stand in the place of the property which the legatee receives, the discretion of the executor can have no guide except the amount of debts which are probably outstanding, and if the aggregate penalties of the bonds are sufficient to meet these, he would seem to have done all that the law requires of him. He was not bound, in the interest of the creditors and even less in the interest of others who might be incidentally affected, to anticipate the insolvency of the legatees and of the sureties to all the bonds but one. The Court which decreed the payment of the legacies might have fixed the penalties of the refunding bonds. It would be an unnecessary inconvenience if a legatee should be required to give a bond in a penalty equal to the value of his legacy, and

in many cases it could not be complied with ; certainly the legatees and those in privity with them are not entitled to complain. *Stack* v. *Williams*, 3 Jones, Eq. 13, sustains these views. This exception is overruled.

3. (Exception 10 of the Burtons). The liability of Hervey surety to the refunding bond of Henry Joyner. Joyner received a legacy and was also devisee of certain lands which he sold to Whitfield on the 1st of March, 1857, which was less than two years after the death of the testator, in September, 1856. The referee holds that Hervey is liable primarily as between him and the purchaser of the land from Henry Joyner, and in this opinion we concur. It is no defence for Hervey that no judgment ascertaining the debt has been heretofore recovered against the executor of Andrew Joyner. The executor is a defendant in this action, one object of which is to establish the debt against him, and all interested in contesting the debt, have an opportunity of doing so.

As to the extent of Hervey's liability :—By the terms of his bond it is confined to a ratable portion of the plaintiffs' debt, supposing all the other legatees responsible for their respective portions. Their insolvency can not extend his liability beyond the terms of his bond. This exception is overruled. It will be in place to say here that we agree with the referee, that Hervey is liable for his ratable portion of the value of the slave sold by H. Joyner. The exception to that charge is overruled.

4. (Exception 4 of Whitfield). It is of course conceded that the sale by Henry Joyner, of the lands devised to him, to Whitfield having been made within two years after the death of Andrew Joyner was void as to the plaintiffs. Whitfield held the land as Henry Joyner did, and sales by Whitfield after the two years, passed unincumbered estates to his vendees, Whitfield holding the price paid him in lieu of the land and subject to its liabilities. Those to whom he

sold within the two years held as he did, and if their lands should be taken, they must look to him for redress. Each devisee or heir is liable for the debt of the devisor or ancestor to the value of the land devised or inherited and in proportion to their respective values. The whole debt to an amount not exceeding that value may be made out of any one of them, and one who pays beyond his due proportion is entitled to contribution from the others. This was held at a very early period as to heirs who were bound by the cognizance of their ancestor, or by his bond in which they were bound as obligors under the style of his heirs. *Harbert's case,* 3 Rep., 11 b. and notes. 2 Williams, Saunders, 6 n. 10; *Jefferson v. Morton,* Petersdoff's Abridgment. Title, *Heirs.*

The liability of an heir for the debts of his ancestor by reason of assets by descent, does not seem to have been essentially changed since the time of Coke, three hundred years ago, but the method by which the creditor enforces it, has been very much changed. As all the devisees are parties to this action, contribution between them will be provided for in the decree. Those if any who sold their land after the two years and have become and are now insolvent, are liable to judgments in favor of all devisees who by consequence of such insolvency shall be compelled to pay more than what would otherwise have been their ratable portions.

It is a consequence of this doctrine that each legatee, or distributee, or devisee, or heir, is, to the extent of what he receives either in personalty or land from the testator or intestate, a surety to all creditors of the testator or intestate, for all the other sharers in the estate; so that if one of two distributees or heirs squanders his property, the other is bound to make the debt good, although it may take every dollar he has received from the common ancestor. To some, this may seem harsh and inequitable, but we take

it to be the established law for over three hundred years; and if it shall seem to the legislature to be inequitable, they have the power to change the law. If I may be permitted to express my individual opinion on what is a question not of present law but of legislation, I would say that the time within which a creditor of a deceased person should be permitted to commence an action against his distributees, heirs, &c., might be safely limited to two years from the death of the intestate, &c., when the creditor had actual notice of the death, and when his debt could be sued on before that time. This would require some provision by which holders of debts not due, and of contingent and uncertain debts, would be enabled to sue for and recover the present value of their debts, as I believe has been done in England, especially as to bonds securing annuities, and what would be more difficult, some just and adequate provision for debts to persons under disabilities.

5. (Exception 2 of Burton.) The legacies to the femes plaintiff were clearly not intended in satisfaction of the debt by the testator, Andrew Joyner, now sued on. (1) It does not appear that the testator knew of his indebtedness to the plaintiffs by reason of his suretyship for Daniel, which was contingent, and in fact most of it arose after his death. (2) He provides by his will for the payment of all his debts. 2 Williams Executors 1167. This exception is overruled.

6. (Exception 6 of Burton.) If the referee has charged Joyner as surety of Daniel with any sums received by Daniel, after his guardianship as to any of the wards ceased, by their arrival at full age or marriage, we think he erred. Such sums were properly chargeable against Daniel, but the surety is only liable for what the guardian received as guardian. This exception *seems* to be founded in fact and is therefore sustained.

7. (Exceptions 3, 4, 5, of Burton). If we understand

these exceptions they present this question:—Whether the plaintiffs are not bound to apply all the personal estate which came to them under the will of Andrew Joyner to the payment of his debt to them before having recourse to the lands devised?

The general rule certainly is that the personal estate of a testator is to be applied to the payment of his debts in preference to his lands. If the executor had paid this debt he would have paid it out of the personal estate and diminished *pro tanto* each legacy. 2 Williams Executors 1532, 1526, n. 2; *Hinton* v. *Whitehurst*, 68 N. C., 316. We see nothing in this case to take it out of the general principle. If all the legatess had remained solvent, each would have contributed *pro rata* to make up the plaintiffs' debt, and the plaintiffs would have lost only their *pro rata* share; and they are now entitled to personal judgments against all of such legatees who have not some special defence, and they may make such judgments available if they can. But they are not entitled to go upon the lands of the testator as in the hands of his devisees by special execution to make any portion of his debt, until they have applied to the payment of that debt the value of the legacies to them (excepting the slaves), and such other sums as they may be able to make out of the other legatees. The reason for excepting the slaves will be mentioned presently. Passing them by, the rule has been long settled. An heir sued on the bond of his ancestor can not plead that there are personal assets in the hands of an administrator, but if he pay the bond debt, he may come on the personal assets for indemnity. 2 Williams Executors, 1532, notes n and o.

As to the slaves: It seems that with the exception of one sold by Henry Joyner, they were all kept by the legatees until they were lost by emancipation. It is settled law, that if this destruction of them as property by *vis major* had happened while they were in the hands of the execu-

tor, he would not be charged with them as assets. 2 Williams Executors, 1508.. It was held in *Hinton* v. *Whitehurst, supra*, that this principle applied after they have been delivered to the legatees, if they remain in their hands unconverted. The peculiarity of the case compelled such an extension of the doctrine, to that class of property; most inequitable results would have followed a refusal to do so. It is not probable, however, that any other class of cases will hereafter arise which can stand upon the same necessity.

It may be said of this rule, as was said above of a similar rule applied to devisees or heirs of land, it makes each, to a certain extent, a surety for all the others, so that the misfortune or extravagance of one legatee may cause another to lose perhaps his whole legacy. The only remedy for such a hardship, if it be one, is as was there snggested. This exception is sustained.

8. (Exception 12 of Burton.) We are of opinion that the sale to Bockover was *bona fide*, and upon a valuable consideration, and having been made more than two years after the death of the testator, he holds free from any liability for the plaintiffs' debt.

9. (Exception 14 of Burton.) In respect to the Graham land: This land was devised to the plaintiffs and sold by their guardian to Henry Joyner for about $10,000 (the sum is not intended to be accurate). Afterwards the guardian purchased it from Joyner, taking a deed to himself, and paid for it mostly with money (or notes) belonging to his wards. After this the plaintiffs filed a bill in equity, and obtained a decree declaring their guardian a trustee of the land for them to the extent that he had used their money in the purchase, and directing the land to be sold and the proceeds applied as far as might be necessary to reimbursing the plaintiffs. It was sold under this decree and purchased by the plaintiffs for, say $8,000 (this sum is not stated as

accurate) which, by order of the Court, was credited to the guardian upon the charge made against him for the original price of the land, and the referee in the present case, if I understand it correctly, states his account accordingly. It is clear that the guardian ought to be charged with the sum for which he sold the land to Henry Joyner with interest from the time he received it. It is equally clear that as the plaintiffs have since got the land from the guardian, they must be charged, or what is the same thing in effect, he must be credited with the sum at which they purchased it. There is no ground for saying that the plaintiffs inequitably have both the land and the price of it. They have the sum it was sold for to H. Joyner under the will, and they have the land because they bought and paid for it. If the guardian were not credited with the sum at which plaintiffs bid off the land, there would be ground for the complaint. This exception is sustained.

10. (Exception 13 of Burton.) But for the act suspending the statute of limitations, it is probable that some of the plaintiffs would be barred. On that act we concur with the referee. As to Whitfield, he was made a party in 1875, and the action against him was begun only at that date. But as his liability did not or does not accrue until a failure of the personal estate derived from the testator to pay the plaintiffs' debt, he is not protected by the statute.

Judgment reversed and case remanded to be proceeded in according to law.

BYNUM, J.—*Concurring.* The decision of this Court in *Brown* v. *Pike*, 74 N. C., 531, was earnestly called in question upon the argument. Since it was made, the legislature has once met and adjourned without regarding it as of such injurious consequence as to call for its interference. The act of 1844, Bat. Rev., ch. 43, § 10, had never received a construction before *Brown* v. *Pike*, and has never been di-

rectly referred to in previous decisions. It has never been decided that a judgment against the administrator was *not* conclusive of assets against the sureties in an action against them, as is perfectly clear from *Bond* v. *Billups*, 8 Jones, 423, decided as late as June Term, 1862. For in that case the Court said : " That the judgment against the administra-tor is conclusive, appears as well from that case (4 Hawks, 339) as from the recent one of *Strickland* v. *Murphy*, 7 Jones, 242. *Whether it was so as against the sureties,* we need not inquire, as they are not parties to the record in the Superior Court." The question therefore came directly before the Court for the first time in *Brown* v. *Pike*, and as it was then fully argued, and was the only point in the case, it necessa-rily received the attention and consideration of the whole Court. Whether the act was wise or unwise can not affect its construction. We are not at liberty to violate the plain letter of the act, and resort to any refinements of construc-tion to make the act accord with our preconceived ideas of what the law should be. If the enactment had been "that all evidence admissible to prove the default of the princi-pal, shall be admissible and competent against his sureties," there would have been some ground for the construction now contended for. That would have been the natural, plain and direct way of communicating the legislative will. But that is not the language used. Other words are added— " shall *in like manner* be admissible, &c.,"—and as they are totally unnecessary to convey the meaning contended for, we have no right to ignore them or distort their proper effect in the construction of the act. Webster defines " like " to be primarily " equal in quantity, quality or degree, exactly corresponding," by which we are certainly not to under-stand that when a judgment is conclusive of assets against the principal, it shall " *in like manner* " *not* be conclusive against the surety ! The words do not import discrimina-tion and a graduated scale of legal effect, conclusive as to

IN THE SUPREME COURT.

one, inconclusive as to the other, absolute verity as to the principal, but simply admissible against the surety; and to give such a construction to the words "in like manner," is to do violence to their plain straight-forward meaning of equality, and exact correspondence, both as to the admissibility and legal effect of evidence. I know of no warrant for treating as surplusage, any words or expression of a statute susceptible of meaning and a judicial construction. Such a liberty taken by the Courts would be a dangerous encroachment upon the legislative department of the government. Nor do I think the construction we have put upon the words "in like manner," at all incompatible with the legislative intent or good policy. The surety is bound for the honesty and fair dealing of his principal, and there is such a privity between them, that a judgment against the former in a manner touching the administration can not, except in a restricted sense, be said to be without the knowledge and consent of the latter. To hold the principal and surety upon the administration bond equally affected by the same evidence, will facilitate and better secure the prompt and watchful settlement of the estates of dead men. With this explanation, I concur in the opinion of the Court.

Error.         Judgment reversed and case remanded.