STATE ex rel. S. T. MORGAN, Adm'r, v. W. A. SMITH.

*Amendments—Evidence—Official Bonds—Burden of Proof.*

1. Where the trial Judge allowed an amendment after verdict, but stated to opposing counsel that if they would show by affidavit that the defendant had any evidence to offer to the complaint as amended, which had not been already offered, that he would either refuse to allow the amendment, or would set aside the verdict; *It was held,* to cure any possible error. It is intimated that allowing amendments after, as well as before verdict, is discretionary with the trial Judge.

2. In an action against a clerk and one of the sureties on his official bond, the record of a judgment against the clerk, and others of his

sureties, in a previous action against them for the same demand, and on the same bond, but in which action the surety in the present action was not a party, is competent evidence to fix the amount due by the clerk.

3. Where money is paid into the clerk's office, the obligations to hold and pay it over to the party entitled, when called on, is incurred when the money is received, and the bond then in force is responsible. If the clerk was elected to another term of office, and became his own successor, the burden is on the sureties on the bond in force when the money was received by the clerk, to show that he has paid it over to himself as his own successor.

4. The failure of the clerk to pay over the money when it is demanded, is strong evidence of a conversion at some previous stage, and the burden of proof is on the defendants to show that the conversion was not made when the money was received.

(*Armstead* v. *Harramond*, 4 Hawks, 339; *Strickland* v. *Murphy*, 7 Jones, 242; *Badger* v. *Daniel*, 79 N. C., 372; *State* v. *Lackey*, 3 Ired., 25, cited and approved).

CIVIL ACTION, tried before *Connor, Judge,* and a jury, at April Civil Term, 1886, of Wake Superior Court.

The action was brought on the official bond of one John N. Bunting, as Clerk of the Superior Court of Wake County, given for a term of office beginning in 1868, and ending on September 4th, 1874, at which time said Bunting was re-elected Clerk, as his own successor, and gave a new bond.

The defendant, one of the sureties on the bond given in 1868, pleaded, among other things, that said Bunting had paid the money, which it was admitted he had received as clerk, over to himself as his own successor, and that the bond given in 1874 was alone liable.

The plaintiff's relator introduced evidence tending to show that at the time of his qualification in 1874, the said Bunting had no money to his credit as clerk in any of the banks in Raleigh.

The other facts fully appear in the opinion.

*Messrs. Charles M. Busbee, Jos. B. Bachelor* and *John Devereux, Jr.,* for the plaintiff.

*Messrs. T. M. Argo* and *Daniel G. Fowle,* for the defendant.

SMITH, C. J.  S. D. Morgan, residing in Wake county, died intestate in the year 1864, and letters of administration on his estate soon afterwards issued to one William Laws, who also died on March 15th, 1871, without having executed and closed his trust by a final settlement.  During the course of his administration, he sued for and recovered divers judgments against persons indebted to his intestate, on which excutions issued, and the moneys due were collected and paid into the clerk's office, in amounts specified in the complaint, between August 11th, 1870, and May 4th, 1871.

John N. Bunting was elected clerk, and entered upon his official duties on the first Monday in September, 1868, having executed a bond with Willie D. Jones, James M. Harris, and the defendant William A. Smith, his sureties, in the form and with the condition prescribed by law, for the due discharge of the duties of said office.  This term of office expired on the first Monday in September, 1874, when being re-elected, he entered upon a new term of office for the four years next ensuing, and gave other bonds.  No administration was granted on the intestates estate, until letters *de bonis non* issued to the present plaintiff, on July 3d, 1879, who brought his action on the bond against the clerk, and the sureties, Jones and Harris, and recovered judgment, but has been unable to obtain satisfaction thereof.

The present action is on the same bond, against the defendant, the other surety, who answers denying his liability in the premises, and most of the facts upon which it is dependent, and setting up as a defence, the three and six years limitation of time for bringing actions specified in the statute:

Upon the trial, the defendant moved to dismiss the action, for that the complaint failed to aver a conversion of the funds and breach of official obligation to have taken place during the clerk's first term of office, or to negative his transfer of the moneys to himself, as his own successor, after

entering upon his second term. The Court refused the motion, remarking that if necessary or proper in the progress of the trial, he would allow an amendment remedying the alleged defect. Such an amendment was subsequently put in, after the rendition of the verdict. To this the defendants' counsel objected, upon the ground that if made during the trial, he would have introduced other testimony.

In response to this suggestion, the Court remarked that if the defendant would, by affidavit, show during the term that he had any evidence pertinent to the case as presented after the amendment, the amendment should be refused, or the verdict set aside and a new trial granted. No such affidavit was made.

In our opinion, if any cause of complaint was afforded, it was removed by this action of the Court, and we think none was, since the allowance of amendments at any time before final judgment, if not after, rests in the sound discretion of the Judge.

The issues, four in number, submitted to the jury, and their responses to each, are in substance, the following:

I. Did Bunting, by virtue and color of his office as clerk, receive the amounts and at the dates specified in the complaint? Answer: Yes.

II. Did he pay over the same to the persons entitled, prior to his entering upon his second term of office, and if so, how much? Answer: No.

III. Did he safely keep and have in his hands, as clerk, the moneys so received, at the time of his second induction into office? Answer: No.

IV. Did the plaintiff demand said moneys, and if so, when? Answer: Yes; between the 3d and 14th days of July, 1879.

Judgment was accordingly rendered in favor of the relator, and the defendant appealed.

1. The appellant's first exception is to the admission in evidence, of the record of the judgment upon the same bond,

in the action before instituted against the principal and other sureties, to show the extent of the clerk's liability.

The testimony and record were competent for that purpose.

In *Armstead* v. *Harramond*, 4th Hawks, 339, HALL, J., said that a "judgment against an administrator is evidence against him of a debt due by the intestate, and is evidence also of assets in his hands to discharge it; and although, for the reason before given, it is also evidence of a debt due, as far as it relates to his sureties," &c.

So, in *Strickland* v. *Murphy*, 7 Jones 242 (244); BATTLE J., remarks: "If a judgment had been obtained against the administrator, they (the sureties to his bond), would be concluded as to the debt, though not as to the assets." In the construction of the Act of 1844, Rev. Code, ch. 44, §10, it is decided that the judgment against the principal upon such offiical bond as the act mentions, is not only conclusive of the debt, as it was without the aid of the enactment, but of assets also, and this effect is given to a judgment against a guardian upon his official bond, in *Badger* v. *Daniel*, 79 N. C., 372, (379).

The Statute was amended by the act of January 20th, 1881, and made to furnish a presumption, instead of conclusive evidence against the sureties. *The Code*, §1345.

The rule was thus explained in the charge to the jury, and they were directed to consider the evidence as raising a presumption, which was open to disproof or rebuttal.

The fifth issue demanded by the defendant was unnecessary, and is covered by those on which the jury passed as determining the liability of the bond in suit for the moneys claimed.

The evidence in reference to the deposit in the two banks, offered to show that the clerk had misused the trust money, though not objected to, was wholly unnecessary, as will be seen later in this opinion.

The instructions requested and refused by the Court were these:

"1. Before the jury can find that the surety, W. A. Smith, is liable, they must find as a fact, that a demand was made by one authorized to make it, before the first Monday in September, 1874, and that there was a refusal to pay; or that before said date, Bunting misappropriated said fund, or converted it to his own use.

"2. The presumption of law is, that Bunting had the money in hand at the time of his re-election and re-qualification in 1874; and it is incumbent on him who denies the fact to show it.

"3. The liability of W. A. Smith expired on the first Monday in September, 1874, and he is not responsible for any acts of Bunting thereafter done."

His Honor charged the jury, "that the liability of the defendant as a surety on the official bond of Bunting, expired on the first Monday in September, 1874, and that he was not responsible for any act or default of Bunting after that time; that the judgment introduced by the plaintiff against Bunting and certain sureties on his bond as clerk, if the jury should believe the evidence, (it being admitted that the defendant Smith was a co-surety on the same bond), was presumptive evidence under the statute, of the liability of the defendant; that there was also a presumption of law, that Bunting, as clerk, had done his duty, and that he had the money received by him, as alleged in the complaint and admitted in the answer, on hand at the time of his re-election and re-qualification as clerk in September, 1874; and that he had paid it over to himself as his own successor. But that both these presumptions could be rebutted, and that it was for the jury to say, considering all the evidence, whether the plaintiff had rebutted the presumption that Bunting paid the money over to himself as his own successor in September, 1874, or whether the defendant had rebut-

ted the presumption of the defendant's liability raised by the statute; that it was a matter to be determined by the jury upon the evidence.        *    ·    *        *        *

That before you can find that the defendant is liable, you must find that Bunting received the money and converted it to his own use, prior to the first Monday in September, 1874, and after the date of the bond signed by the defendant; and that a demand has been made upon Bunting for the money by the plaintiff, and that he refused or failed to pay it."

His Honor further charged, that the law requires public officers to keep funds entrusted to them carefully and safely, and although they should believe that Bunting had to his individual credit, in the Citizens National Bank, on the first Monday in September, 1874, the amount shown by the witness Brown, yet if they should believe from the evidence, that he had used the money collected upon the judgment in favor of Laws, administrator, they should find the third issue in the negative.

The charge was quite as favorable, as and we think more so, than he could reasonably ask, for the whole burden of showing the misuse of the money during the first term of office seems to have been put on the shoulders of the relator.

The case of the State v. Lackey, 3 Ired., 25, is so directly in point as to be decisive of the liability of the first bond.  In that case, the claims were placed in the constable's hands in October, 1840.  During this year, he collected the money. He was re-appointed in 1841, and in May the money was demanded.  The action was upon the bond given at March Term, 1841.  Gaston, J., delivers the opinion, and uses these words: "In the case before us, the sureties in the bond of March, 1841, stipulated for the faithful performance by their principal of the duties of the office then conferred, and for his diligence in endeavoring to collect, and his punctuality in paying over what might be collected on claims that should

be put in his hands for collection. But the moneys, the non-payment whereof gives rise to this suit, were either collected *by virtue* of his antecedent office of constable, or upon claims put into his hands for collection, and satisfied before he received his second office. In the former supposition, the non-payment is a violation of the duty which that former office imposed; and in the latter, it is a failure to comply with the stipulation in the bond when that office was conferred. The sureties on the bond then given, are therefore liable, but not the sureties in the bond of 1841."

The governing principle is this: the obligation to hold and pay over the money to the party entitled to it when called on, is incurred when the money is received, and if not so paid over, without other proof, the bond then in force is responsible. It is matter of defence and excuse that it has been paid over to the successor, and this the defendant ought to show. The failure of the clerk to pay over when the fund is demanded, is cogent evidence of a devastavit committed at some previous stage, and to shift the liability from one term to another, and from the bond formerly liable to another, proof ought to come from the delinquent, or from his sureties. Instead of this, the Judge required the relator not only to prove the delivering of the moneys to the clerk, but also affirmatively that the *devastavit* took place during the first official term. If this burden rested on him, while the officer might be able to tell, the relator would usually fail to show the time of the misappropriation, and thus would recover on neither bond. Yet the jury do find, under these disadvantages, that the clerk did not safely keep the funds during his first term—that is, misapplied them in violation of his bond.

These are all the exceptions presented in the case on appeal, and we find no error in the rulings prejudicial to the appellant.

The judgment must be affirmed, and it is so ordered.

No error.　　　　　　　　　　　　　　　　Affirmed.