### T. B. HOLDEN v. B. P. STRICKLAND.

*Practice—Issues—Assets of Decedent—Resulting Trust—Lien for Money Advanced to Pay for Land—Discharge of Trust—Subrogation.*

1. This Court will not consider the objection that there was no evidence, or not sufficient evidence, to submit certain issues to the jury, unless the point was raised before such issues were submitted.

2. The real or personal assets of a deceased person cannot be applied to the payment of his debts, where there is no lien, except by or through his personal representative.

3. Where land is bought with the money of one person and is conveyed to another, the latter is a trustee for the lender to the extent of the money so paid, without any express agreement to that effect.

4. Where H held land in trust, first to pay a debt for money advanced for its purchase and then for the benefit of another, the creditor has an equitable lien thereon until the debt is paid, and this is not destroyed by his surrendering the note of H, representing such debt for the notes of the resulting *cestui que trust* and others given in settlement of the original debt.

5. Where land is held in trust for the payment of a debt, a third person, who is compelled by law to pay it, is subrogated to the rights of the creditor and may collect the amount so paid from the land.

CIVIL ACTION, heard before *Shuford, J.*, at April Term, 1893, of FRANKLIN Superior Court. There was judgment

for the plaintiff and defendants appealed. The facts appear in the opinion of Associate Justice FURCHES.

*Mr. C. M. Cooke*, for plaintiff.
*Mr. N. Y. Gulley*, for defendants (appellants).

FURCHES, J.: It appears that Richard Holden, Sr., father of the plaintiff and of the *feme* defendant, was the owner of a considerable body of land, but was in debt, upon which judgments had been recovered against him for more than $1,600, and in March, 1872, the Sheriff of Franklin County sold said land under execution, then in his hands issuing on the judgments. At the sale these lands were bid off by Richard Holden, Jr., at the price of $1,629.00, an amount sufficient to satisfy the judgments. Young Holden did not have the money to make this purchase, but bid them off under an arrangement made between himself, his father Richard Holden, Sr., and F. L. B. Harris. Harris was to furnish the money to pay for the land, and Richard Holden, Jr., gave his note to Harris for the same, and was to take a deed for the land and hold it, first in trust to pay Harris back his money, and then in trust for his father, Richard Holden, Sr. This was all done, and the Holdens, it seems, commenced to pay Harris his money. But in 1874, and before Harris had been paid in full, Richard Holden, Jr., died, the legal title of the land still being in him. That not long after the death of Richard Holden, Jr., his father, Richard Holden, Sr., commenced an action against his widow and heirs-at-law in the Superior Court of Franklin County alleging the facts above stated and demanding a judgment declaring the defendants (the widow and heirs-at-law of Richard Holden, Jr.) trustees of said land and that they be required to convey to him. And the Court so adjudged, and under the decree of the Court the legal title to the land was made to Richard Holden, Sr.

Harris was not a party to this action and not bound by the judgment therein, nor the conveyance made thereunder. That after this, in the month of May, 1888, the debt to Harris then being reduced to $409.38, Harris surrenders the note given him in 1872 by Richard Holden, Jr.; and Richard Holden, Sr., Bryant M. Holden, F. C. Holden and T. B. Holden execute their note to the said F. L. D. Harris for the amount still remaining due on the note of Richard Holden, Jr., (B. M. Holden, F. C. Holden and T. C. Holden, being sons of Richard Holden, Sr.) That after this last note was given, there was paid on it the sum of $182.50 and some time after this the said Richard Holden, Sr., died, leaving the remainder of the Harris debt unpaid. At the time of the execution of this last note to Harris, Richard Holden, Sr., was still the legal owner of 450 acres of the land originally bought by Richard Holden, Jr., which he divided into three lots and executed separate deeds therefor, conveying one of the said lots to the plaintiff T. B. Holden, one lot to F. C. Holden and the other lot to his daughter, Dora C. Strickland, then the wife of Frank Green, and the consideration expressed in all these deeds is natural love and affection. But the plaintiff alleges that there was another consideration for all these deeds in addition to that of natural love and affection; and that was that the grantees should each pay one-third of the Harris debt, then unpaid, and that the deeds were executed with this understanding, and that the defendant Dora took her lot under this agreement, which plaintiff says was a parol trust. He then alleges that after the death of his father, Richard Holden, Sr., Harris brought a suit in the Superior Court of Franklin County on the note given him by Richard Holden, Sr., and B. M. Holden, F. C. Holden and himself, in which he set up the trust of 1872 when the land was purchased by Richard Holden, Jr. That in this action

Harris recovered judgment on his note, and had the trust of 1872 declared, and decree and order to sell said land to satisfy his judgment. That plaintiff was one of the signers of said note and a defendant in said action, and, as Harris was proceeding to sell his land under said judgment and to prevent his lands from being sold, he paid off and satisfied the Harris judgment, and now asks that the lot conveyed to the defendant Dora be subjected to the payment of one-third of the amount he paid said Harris.

Defendants in their answer admit that the land was bought by Richard Holden, Jr., as alleged; that Harris furnished the money and that said Richard took an absolute deed for the land, but in trust first to pay Harris back the purchase money, and then in trust for his father Richard Holden, Sr., and that Richard, Sr., is dead and that Harris brought suit and recovered judgment as alleged. But they say that the defendants were not parties to this action and not bound by the judgment, and they deny that the defendant Dora agreed to pay anything on the Harris debt, or that she took her lot under any parol trust from her father. But on the contrary she took it free from any trust whatever and is now the absolute owner thereof, free from any claim of the plaintiff thereon, and denies the plaintiff's right to recover.

The court submitted the following issues to the jury:

"1. Did Richard Holden leave any personal property applicable to the debt of F. L. B. Harris? Ans. No.

"2. If so, what was the value? Ans. None.

"3. What was the proportion in value of the tract conveyed to defendant Dora to the whole tract of 450 acres as conveyed? Ans. One-third.

"4. Did Richard Holden at the time of his conveyance of the land to defendant Dora Strickland retain sufficient

property to pay his debts and available for that purpose?
Ans. No.

"5. Did Richard Holden, Sr., convey the land to defendant Dora in trust to pay its proportion of the Harris debt as alleged in the complaint? Ans. Yes.

"6. Did Harris abandon his original trust on the land before the conveyance of the land to the *feme* defendant? Ans. No.

The case on appeal appears to set out the whole evidence. F. C. Holden, a witness for plaintiff, among other things testified under objection of defendants, as follows: "I have settled my part of the Harris debt with my brother T. B. Holden. I paid him in land to the amount of 150 dollars. There was no money passed. When my father divided up the land he told me and T. B. Holden and Frank Green, who was then my sister's husband, that the Harris debt had not been paid; that he wished to divide his land, and we must help him pay that debt. He said he would do what he could, but if he could not pay it all we would have to pay the balance. This was the day the land was being run out for division. Mine was run out before that time. Frank Green was my sister's husband and was there to see how the lines were run. My sister was not there. I went home after the land was surveyed and was not present when the deeds were written;" and defendents excepted. This is the only exception presented by the record, and the evidence above quoted and objected to seems to be all the evidence as to a parol trust, as between Richard Holden, Sr., and the defendant Dora, except the testimony of W. R. Martin, in which he says: "I went over there to take probate of some deeds, and Richard Holden, Sr., in the course of a conversation said something about he had divided up his lands and his children would have to pay the Harris debt."

We do not think this evidence competent or sufficient to authorize the court to submit the fourth issue to the jury, and if the defendants had asked the court so to instruct the jury, we would have sustained their prayer. But as no such prayer was made, we cannot consider this question as to whether there was any evidence, or any such evidence as should have been submitted to the jury. *State* v. *Kiger*, 115 N. C., 746. And we prefer to put our opinion upon facts admitted or not disputed rather than upon the exception to evidence which seems to us to have been immaterial and to have proved so little, if anything.

It is contended that the judgment below should be sustained upon the doctrine of contribution, and the case of *Badger* v. *Daniel*, 79 N. C., 372, is cited as authority for this position. But we do not think so. Nor do we think *Badger* v. *Daniel* supports this position. In that case the personal representative of Joyner, the debtor, as well as his devisees were made parties to the action. This being so— that is, the estate of Joyner being represented—the matter of contribution was worked out. But our case differs from *Badger* v. *Daniel* in several important and, we think, essential respects. The first is, as we have stated, in that case the personal representative of the debtor's estate was a party, and in this case the personal representative is not a party. And we think it a well settled rule in this State that no assets of a deceased person can be applied to the payment of debts (where there is no lien) except by or through the personal representative, whether lands or personal effects. *Tuck* v. *Walker*, 106 N. C., 285 ; *Mauney* v. *Holmes*, 87 N. C., 428 ; *Murchison* v. *Williams*, 71 N. C., 135. Another distinction is that in *Badger* v. *Daniel*, the lands there subjected to the payment of the debts of the testator were willed to the defendants, other than the executor. And under the law they were subject to the payment of debts. While in

this case the lands of the defendant were not willed to her by the debtor, but were conveyed to her by deed during the life time of the debtor, and were not like the lands devised in the case of *Badger* v. *Daniel*, subject to the payment of any debt due by Richard Holden, Sr., at the time of his death, unless the conveyance was made in fraud of such debt. They are not void as contended, but only voidable under the statue of 13th. Elizabeth, if conveyed in fraud of creditors. And this under our law can only be determined by or through the personal representative. *Murchison* v. *Williams* and *Tuck* v. *Walker*, *supra*.

But it is admitted that Richard Holden, Jr., bought the land and that Harris' money paid for it and that Holden took a deed for the same under the express agreement to hold it in trust, first to repay Harris the purchase money, and then in trust for his father, Richard Holden, Sr.

The fact that the land was bought and paid for with the money of Harris constituted Holden a trustee for Harris' benefit to the extent of the money paid, without the express agreement that he was to hold it in trust for Harris. *York* v. *Landis*, 65 N. C., 535 ; *Stallings* v. *Lane*, 88 N. C., 214. And the equitable estate would have been in Harris by operation of law. But in this case there was not only the trust the law created, but there was an express trust that Richard Holden, Jr., should hold it, first to pay Harris' debt and then for his father. This being so, the equitable estate in said land was in Harris until his debt was paid. *Shelton* v. *Shelton*, 5 Jones Eq., 292 ; *Shields* v. *Whitaker*, 82 N. C., 516. And the fact that he surrendered the note given him by Richard Holden, Jr., and took the note of Richard Holden, Sr., and his three sons B. M. Holden, F. C. Holden and T. B. Holden, did not discharge the trust to him. *Hyman* v. *Devereux*, 63 N. C., 624 ; *Ijames* v. *Gaither*, 93 N. C., 358. But it did change the evidence

of debt, and give him other additional security therefor. Before this note was executed, neither was Richard Holden, Sr., B. M. Holden, T. B. Holden or F. C. Holden bound to Harris for the debt. But after that, they were all bound for the debt, and he might collect it out of either of them if it became necessary to do so. And though the case does not say so in so many words, we think sufficient appears to show that this new note was given by Richard Holden, Sr., as principal, and his sons, as sureties. This being so, Richard, Sr., and then the lands were bound for this debt first; the sureties to the note were only bound as sureties, both to Richard, Sr., and to the land, which had already been dedicated to the payment of this debt. In other words, B. M. Holden, F. C. Holden and T. B. Holden were sureties to both Richard Holden, Sr., and also to the land. And Richard Holden, Sr., and the land were both principal debtors as to these sureties. And this being so, it would seem that as T. B. Holden had paid the debt of his principal, he would have the right to be re-imbursed out of the principal—the land. *York* v. *Landis*, *supra*; *Nelson* v. *Williams*, 2 D. & B. Eq., 118; *Bank* v. *Jenkins*, 64 N. C., 719; *Matthews* v. *Joyce*, 85 N. C., 258.

But there is another view presented by the facts in this case, which seems to us to sustain the plaintiff's right to recover as against the defendants, and that is, the whole of the 450 acres of land was dedicated to the payment of the Harris debt. He had the right to collect one-third of his debt out of the lot given to defendant Dora. And when the plaintiff was compelled by judgment to pay Harris, he was subrogated to the rights of Harris. *Bell* v. *Jasper*, 2 Ired. Eq., 597; *Fox* v. *Alexander*, 1 Ired. Eq., 340; *Harris* v. *Harrison*, 78 N. C., 202; *Heron* v. *Marshall*, 42 Am. Dec., 447, and note; *Ins. Co.* v. *Middleport*, 124 U. S., 534. This being so, it seems to us the judgment below should be sustained.                                    Affirmed.

AVERY, J. (concurring) :   The only testimony offered to subject the land conveyed by the father to his daughter (now Mrs. Strickland, then Mrs. Green) by deed absolute upon its face, with the burden of the trust, is that of the grantee's brother, and is as follows: " When my father divided up the land he told me and T. B. Holden and Frank Green, who was then my sister's husband, that the Harris debt had not been paid, that he wished to divide up his land and we must help to pay that debt.   He said he would do what he could, but if he could not pay it all we would have to pay the balance.   This was the day the land was being run out for division.   Mine had been run out before that time.   Frank Green was my sister's husband and was there.   My sister was not present.   I went home after the land was surveyed, and was not present when the deeds were written. "

It is an established rule of law that, in order to the creation of a parol trust thereby, the declaration of a grantor must be made either prior to, or cotemporaneously with the execution of the deed, and must be sufficiently explicit and definite to indicate clearly what is the subject matter of the trust, the extent of the charge or burden imposed and the purpose for which it is imposed.   1 Perry on Trusts, Sec. 77.   This principle arises out of the very nature of a trust, which is an unexecuted use, and which, when created before the enactment of the statute of uses, by a declaration accompanying or preceding a feoffment, must have been so certain that the witnesses could bear in their memories such a clear and determinate recollection of the conscientious duty devolved upon the feoffee, as would enable the ecclesiastical court to enforce it, had simply said, when erecting monuments to indicate division boundaries, that unless he should meantime discharge a certain debt, his children, who would be enfeoffed by him of shares

unequal in quantity and value of his land, must pay it, without indicating in what proportion, no court of conscience would have assumed to declare that his purpose was to require them to pay equal portions of the debt out of unequal bounties bestowed by him.   This is but an illustration of the necessity for the rule that, while trusts attending the transmission of the legal estate by deed may be created by oral declarations and while the proof need not be supported by testimony such as is required to convert an absolute deed into a mortgage (*Shields* v. *Whitaker*, 82 N. C., 516) the Courts will not attempt to enforce them unless the purpose of the grantor be clearly expressed.   1 Perry, *supra*, Sec. 83.   " Indeed (says Perry in the section cited) Courts require demonstration on the latter point, and the trust will not be executed if the precise nature of it (the subject matter of the trust) and the particular persons who are to take as *cestuis que trust*, and the proportions in which they are to take, cannot be ascertained."   The same rule as to ascertaining from the terms of the trust the certainty of the subject matter and the manner of disposition of the trust fund among those who are to receive it, obtains, whether the trust be declared orally or in writing, and whether by devise by other writing, or by oral declarations made prior to, or accompanying the execution of a deed, and whether the trust is created for the benefit of children or in favor of creditors.   It is competent to create a charge upon land to pay debts by declarations made at the same time and subject to the same limitations, as where the trust is raised to provide for children.   3 Pom. Eq. Jur., Sec. 1244 to 1248. In either case, the declaration, in order to its enforcement, ought to show or in some way enable the court to ascertain, either in what proportion the burden is to be borne by several holders of the legal estate, or in what ratio benefits are to be apportioned between *cestuis que trust*, as

the case may be.   Speaking of this subject, Lewin (Vol. 1, star page 56 of his work on Trusts) says that a trust will not "be executed if the precise nature of the trust cannot be ascertained."   Has the exact nature of the trust been determined in this case?   *Id certum est quod certum reddi potest.*   It has been found by the jury that the tract of land conveyed to the *feme* defendant was one-third in value of the whole landed estate of her father.   The purpose of the father therefore to impose a charge of one-third of whatever debt was still due at the time of his death, may be fairly implied from his language.   This conclusion is not reached without difficulty, but it is probably safe to rest the decision upon the principle that it was the expressed intention of Richard Holden, Sr., to charge all of the tracts of land conveyed to his children by voluntary deed with the debt for the purchase money unpaid at his death, and that he could so charge it by declaration preceding or accompanying the execution of the deed.   3 Pomeroy, *supra.*   If her share is one-third, as the jury found, it is not inequitable to subject it to one-third of the debt still due, in furtherance of what appeared to be her father's purpose.   If the amount of the charge in favor of the original creditor was one-third of the debt, then when her brother discharged the lien, was he not subrogated *pro tanto* to the rights of the creditor against her?   It must be admitted, as already stated, that Richard Holden, Sr., could create and did create by his declaration a charge upon the whole of the land in favor of the creditor, and that charge could have been enforced by the creditor or his representatives.   2 Story Eq. Jur., p. 589, Sec. 1244.

If T. B. Holden was his father's surety and as such paid the whole of the debt, then the statute (*Code*, Sec. 2093 to 2096) gives him a right of action against co-sureties at law, and also such priority as the creditor would have had as a

claimant against his father's estate. The creditor had a priority as an incumbrance holding a claim that must have been satisfied out of the land before it could have been subjected to pay any claim against the grantee and before her title could be perfected. 19 Am. & Eng. Enc., 84; Abbott's Law Dictionary—Priority. If by virtue of the declaration a charge was created in favor of Harris the creditor, then T. B. Holden on payment of that debt, constituting the charge and having priority over other claims, was, as surety, subrogated in equity to the rights of the creditor, arising either out of any prior lien or indemnity in his favor, against the land conveyed to the *feme* defendant (*Peebles v. Gay*, 115 N. C., 38) and was entitled to recover one-third of the debt, which he paid as surety of his father, from the *feme* defendant as the holder subject to the charge imposed by her father upon the one-third in value of the land burdened with the debt, which he conveyed to her. It seems to have been conceded, if it did not appear positively, that T. B. Holden was, though nominally a principal, in reality the surety of his father. *Welfare v. Thompson*, 83 N. C., 276. For the reasons given, I think the judgment should be affirmed.

CLARK, J. (concurring): Richard Holden died leaving an indebtedness for the balance due on purchase money for land and no personal property applicable to his debts. Prior to his death he had divided this land, the sole property he had, among his three children, one of whom is the defendant, and conveyed it to them by deed. The jury find that Richard Holden at the time of these conveyances by him did not retain sufficient property to pay his debts and available for that purpose and that the defendant received one-third of the land in value. The deeds on their face express that they are made in consideration of natural

love and affection and it is admitted that there was no valuable consideration.

Harris brought an action on the bond for the purchase money against the executor of Richard Holden and obtained judgment for the amount due with a decree that the one-third of the land conveyed by Richard Holden to the plaintiff should be subject to payment of the debts because it was a voluntary deed and void as to creditors. The plaintiff paid off said judgment and his brother has repaid him one-third and this is a proceeding to subject that third of the land which is in possession of the defendant to the repayment of the other third.

The jury find as a fact that when Richard Holden conveyed this third of the land to the defendant it was expressly charged with the duty of paying its one-third of the Harris debt. This should be conclusive. But if we put that entirely on one side, this would still be so by operation of law without any agreement, on two grounds:

*First.* It is alleged in the complaint and is submitted in the answer that the indebtedness to Harris was secured by the conveyance of the land to a trustee to pay the purchase money and afterwards to convey to Richard Holden. The trustee having died a decree was made in an action brought by Richard Holden against the widow and heirs-at-law of the trustee for a conveyance to Richard Holden but the creditor Harris was not a party to that proceeding and was unaffected by it. His Honor also correctly instructed the jury that the trust in favor of the creditor was not abandoned. His taking a new note for the balance due and unpaid on the purchase money, in the absence of evidence to show such an intention, was not an abandonment of the security. *Hyman* v. *Devereux*, 63 N. C., 624. One part of the trust property having paid the debt, this part which passed without any consideration to the defendant is charge-

able to contribute its pro rata.    Adams Eq., 570 ; *Stanly*
v. *Stocks*, 16 N. C., 318.

*Secondly.*    The conveyances to the three children, being
entirely voluntary, were void as to creditors, since property
sufficient and available to pay his debts was not retained
by the father.    Each share so conveyed is liable for its pro-
portionate part of the debt, and as the plaintiff's share has
by decree of a court been subjected to the payment of the
whole debt, he is clearly entitled to be reimbursed by a
decree subjecting the one-third of the land conveyed to the
defendants to an order of sale for the repayment of the one-
third of the debt for which the defendant's share was
chargeable and which plaintiff has been heretofore forced
to pay under the orders of the Court.    This would be so if
the defendant had been a devisee.    *Badger* v. *Daniel*, 79
N. C., 372, 382 ; *Green* v. *Green*, 69 N. C., 25 ; 4 Am. and
Eng. Enc., 11 ; *Taylor* v. *Taylor*, 48 Am. Dec., 400 ; *Scher-
merhorn* v. *Barhydt*, 9 Paige, 28 ; *Clowes* v. *Dickerson*, 5
Johns., Ch. 235.    And she is in no better position as one of
the grantees of the father under a deed void as to creditors.
This view renders the exceptions taken immaterial, and if
there was error, as to which it is unnecessary to intimate
any opinion, such error was harmless.

                                            Affirmed.