## WALTER S. JOHNSON *v.* ERNEST BOBBITT.

1. GUARDIAN. *Infant. Arrival at majority. Decree.*

    A decree of the chancery court directing its clerk, into whose hands money belonging to an infant litigant has come, to pay the same over to the guardian of the infant, may be enforced and collected by the infant after he becomes adult, although he never had a guardian.

2. ESTATES OF DECEDENTS. *Sale of lands. Special statutory bond. Code 1880, § 1932; code 1892, § 589. Chancery clerk. Official bond. Code 1880, § 1807; code 1892, § 460. New term. New bond.*

    Where the clerk of the chancery court was appointed a commissioner to sell the lands of a decedent for distribution of the proceeds among the heirs, and he makes such sale, he and the sureties on his official bond at the time of the sale and reception of the purchase money are liable (code 1880, § 1807; code 1892, § 460) to the heirs for their distributive shares of the proceeds, although a special statutory bond (code 1880, § 1932; code 1892, § 589), to account for the proceeds, was executed by him before the sale, and they remain liable after the clerk has entered upon a new term of office and executed another official bond.

FROM the chancery court of Pontotoc county.

HON. HENRY L. MULDROW, Chancellor.

Bobbitt, appellee, was complainant and Johnson, appellant, was defendant in the court below. From a decree in complainant's favor the defendant appealed to the supreme court. The facts are fully stated in the opinion of the court.

*Fontaine & Fontaine,* for appellant.

The court below erred in holding appellant liable, as surety on the official bond of Lowry, as clerk for his first term of office, for the amount sued for, because while this money came into Lowry's hands by order of the court, the final decree orders

Lowry to pay said money only to his guardian, appellee being an infant, and having no guardian, there was no one to whom Lowry could pay said sum under said final decree, and consequently there could be no breach of his bond, and appellant could not be held liable as surety thereon.

The bond of the clerk covers his term of office only, and the sureties of an officer are answerable only for those acts and defaults of their principal which occur subsequently to the execution of his official bond. *Crawn* v. *Commonwealth*, 10 Am. St. Rep, 844 and authorities cited.

When moneys which have been collected during the first term of office remains in the custody of the officer, when he enters upon the discharge of his duties for the second term, the sureties for the latter term become immediately answerable therefor, and those of the former term are relieved from further liability. *Crawn* v. *Commonwealth*, 10 Am. St. Rep., 844; *Supervisors* v. *Alford*, 65 Miss., 63.

And when a default has occurred, but there is no evidence to determine at which term it occurred, the law will presume that it occurred at the last term. 24 Am. & Eng. Ency. Law., 876, and authorities cited in note 1, page 877; Brandt on Suretyship and Guaranty, 606, Sec. 467, and authorities cited in note 4.

If, however, such officer fails to account for and pay over to his successor the funds chargeable to him, as shown by his books and final account, the sureties on the last bond are *prima facie* liable, thereon, and to relieve themselves must show that the defalcation in fact occurred during a prior term. *Board of Education* v. *Robinson*, 83 Am. St. Rep., 374; *Independence School District* v. *Hibbard*, 80 Am. St. Rep., 271; *Custer County* v. *Tunley*, 79 Am. St. Rep., 870.

And when sureties on the bond for a second term being sued, plea was held bad, for not denying that the money was in the principal's hands as his own successor at the time of the execution of the bond. *McKinney* v. *Monroe Co.*, 68 Miss., 284.

According to a preponderance of the authorities, when an officer receives money and reports the receipt to the proper authorities, the presumption will be indulged that such money continued to be in his official possession or custody until the contrary is shown, and there is no showing upon the subject until the default is discovered, either in or after his last term of office, the sureties for that term are *prima facie* liable, and to escape liability, must show that the default actually occurred before they became such sureties. *Crawn* v. *Commonwealth*, 10 Am. St. Rep., note on page 846, cites *Heppe* v. *Jones*, 73 Cal., 265; *Bruce* v. *United States*, 17 How., 437; *United States* v. *Earheart*, 4 Saw., 245; *Kelly* v. *State*, 25 Ohio St., 567; Brandt on Suretyship, 605, sec. 467.

The contention of complainant, that it was money to be paid to a private individual, and therefore the second bond is not liable, will not do, it does not apply in this case; the money came to the hands of Lowry by order of court, and he was ordered and directed to pay over by the court to the guardian of complainant, who is also *quo ad hoc* officer of the court, thus keeping the money under the control and management of the court until discharged by the court.

The clerk in making sale in this case, was not acting in his capacity as clerk, nor as *ex officio* commissioner, but was appointed a commissioner specially to make this sale, and was required by the court to give bond, conditioned to pay according to law all money, which may come into his hands as such commissioner. Code 1880, § 1932.

The clerk could have made the sale as clerk without any additional bond, his official bond would have covered it, but the sale was made by Lowry, not as clerk, but as special commissioner, and as such, was required to give bond specially to account for proceeds of sale to distribute proceeds according to directions of court, which bond is not cumulative to clerk's bond, but is alone liable for amount sued for in this cause. *Swofford* v. *Garmon*, 51 Miss., 350.

But if we should be mistaken in this, and the time of default is not definitely fixed, then all the sureties on all the bonds should be made parties for discovery. *Adams* v. *Conner*, 73 Miss., 425.

*Mitchell & Fletcher*, for appellee.

The first question in the case deals with the liability of the bondsmen on the official bond for the proceeds of the land sale, in view of the execution of a special bond.

The language of the decree ordering the sale is "that W. P. Lowry, the clerk of the court, is hereby appointed a commissioner to sell said lands, etc."

"The official bond of a clerk shall be held to cover all his official acts; and all money which may come into his hands according to law, or by order of the court or chancellor." Code 1880, § 1807. (§ 460, code 1892.)

This money having come into the clerk's hands by order of the court falls within the provisions of this section.

Money paid to the clerk by the court pursuant to an order or judgment of the court is received by such clerk in his official capacity, and the sureties are liable for his misappropriation thereof. *Bantley* v. *Baker*, 84 N. W., 603.

The sureties on the official bond of a clerk of court are liable for funds which, by order of court, came into his custody and safe-keeping upon a sale of real estate made by him under a proper order of court appointing him to make the sale. *Fort* v. *Assman*, 16 S. E., 887.

The sureties on the official bond would be liable for this money if no additional or special bond had been given.

But § 1807 of the code of 1880 (§ 460 of the code of 1892) provides, "And such clerk may be required by the court, or the chancellor, in vacation, to give additional bond in any particular case, which shall be cumulative security, and shall not, in any manner, affect the liability on his official bond for any matter covered by it."

If plain and simple language means anything, it means that the execution of this additional and special bond cannot preclude complainant from suing on the official bond. *State, use Delmas,* v. *Cox,* 62 Miss., 786; *State, use,* v. *Hall,* 53 Miss., 626; *State* v. *Polling,* 44 W. Va., 312.

Appellant contends that because Lowry was his own successor, the presumption is that he kept the money safe during his first term, and accounted for it to himself as his own successor, and that the defalcation is presumed to have occurred during the second term. This argument and conclusion is based upon the theory that this money stands on the same footing as public moneys for which the officer is bound to account to his successor, and that there was a breach of his official bond when he so failed to account to his successor.

The point now under discussion we frankly admit, has been variously decided by the courts of the different states; but the weight of authority is in favor of the view that the sureties of the term when the money was received are presumed to be liable in the absence of proof as to when the defalcation occurred.

This view is completely sustained by the opinion of the court in *State* v. *Smith,* 95 N. C., 396, in which it is held that the failure to pay over the money when demanded, is strong evidence of a conversion at some previous stage, and the burden is on the defendant to show that the conversion was not made when the money was received, and so, where a clerk was elected another term, the burden is on the sureties on the bond in force when the money was received by the clerk to show that he had paid it over to himself as his own successor. It has been held further in a number of states that when moneys have been received by a public officer, his liability, and that of his sureties, become fixed at once, and such liability continues until removed by proof that he has disposed of the money as required by law, and that the sureties upon the bond for the term at which he received the money remain liable unless they

can show that such moneys continues in his hands when he entered upon the discharge of his duties for the succeeding term. *Freeholders* v. *Wilson*, 16 N. J. L., 110; *Trustees of Schools* v. *Smith*, 88 Ill., 181; *Overacre* v. *Garrett*, 5 Lans., 156; *Coons* v. *People*, 76 Ill., 383.

If the court should hold that in case of public moneys for which the officer is bound in law to account to his successor, the second set of sureties is *prima facie* liable, the rule can have no application to the case at bar. All the authorities that may be cited by appellant on this point relate to funds that are essentially public, funds in the hands of county treasurer for the most part, and which he is bound in law to turn over to his successor, and in relation to which there is a breach of the bond as soon as he fails to account to his successor. All the authorities adverse to the view presented in the first part of this brief proceed upon the idea that the defaulting officer is presumed to have done his duty, and paid the money over to himself as his own successor. Now, if the officer is in charge of a fund which he is not obliged, under the law, to pay over to his successor, the whole argument falls to the ground, for when the reason of the rule ceases, the rule goes with it.

No statute makes it the duty of the clerk to pay over trust funds to his successor in office. Section 2280 of the code of 1880 (§ 929, code 1892), can have no application to trust funds, it having reference to books, stationery, etc.

Since the clerk could not have paid over this money until complainant attained his majority, no one had a right to complain until Bobbitt became twenty-one years of age, and demanded his money without result. *Clelland* v. *McCumber*, 15 Col., 355.

But the liability of the clerk and his sureties is a continuing one, and extends beyond his term of office, and remains until all funds coming into his hands have been disposed of according to law. For although there is no breach of an officer's bond when he is removed from office, his liability to account

remains, and the bond continues in force until he has fully accounted and fulfilled all its conditions.   *Smith* v. *United States*, 170 U. S., 372.   To the same effect, and upon a state of facts very similar to the case at bar, see *State* v. *Upchurch*, 110 N. C., 62.

As the money received by him in this matter was a private fund for which he did not have to account to his successor in office, and for which he could not account to his successor in office except by an order of court made for that purpose, because there is no statute providing for it (and the proof in this case does not show that there was such order of court, and in fact there was none), then in fixing bond for his second term of office, the authorities fixing the bond would not have possibly contemplated or regarded the private fund which he had received during his first term of office, and therefore the bondsmen on his second official bond could not in any view of the case be held responsible for the same, because his second official bond could only cover those amounts which he turned over to his successor in office, which could only be public funds, and for the faithful performance of his duties during his second term of office.

No liability then rests upon the sureties for the second term, since there was no duty devolving upon Lowry to account to himself as his own successor.

TERRAL, J., delivered the opinion of the court.

In 1885 W. P. Lowry, the clerk of the chancery court of Pontotoc county, was appointed a commissioner to sell the real and personal property of the estate of William Ward, deceased, for a division of the proceeds thereof among the heirs of said William Ward, of whom Ernest Bobbitt, the appellee [plaintiff below], was one.   Lowry made the sale of the property, received the proceeds of the sale, and upon a report thereof he was by a decree of the chancery court directed to pay out said moneys to the heirs of the said William Ward, and

to pay to the guardian of Ernest Bobbitt, who was then a minor of tender years, the sum of $98.39. All the proceedings relating to said matter happened during the term of office of said Lowry, commencing January, 1884, and ending January 1888. Bobbitt, neither at the time of the making of the decree for distribution, nor afterwards, had a guardian. Coming of age, he was refused payment of his distributive share of the estate, when he brought suit against Lowry and Johnson and others, the sureties of Lowry on his official bond for his term of office, commencing January, 1884, which was made by § 1807, code 1880, "to cover all his official acts, and all moneys which may come into his hands according to law, or by order of the court or chancellor." There was a special bond given by Lowry by order of the court, before the sale was made. He was also re-elected to said office in November, 1887, for a second term, and gave bond accordingly. Appellant was not a surety on the two last named bonds. He contends that the sureties on the latter are liable for Bobbitt's distributive share of said estate, if in fact any are so liable. He insists, too, that Lowry himself is not liable, because Bobbitt never had a guardian, and the condition of its payment was inoperative.

1. The contention of Johnson that Lowry himself, as well as he [Johnson], is discharged of any liability upon said bond, because Bobbitt never had a guardian, is too airy and unsubstantial to be a basis of judicial action. Bobbitt, being now of age, can, if he remains sane, have no guardian; and, if Johnson's contention be law, he and Lowry are discharged from a payment of what is admitted to be due, and which never has been paid. We think the decree to pay the money to Bobbitt's guardian included the duty and obligation to pay it to Bobbitt himself if it should not during his infancy have been paid to his guardian.

2. The claim of Johnson that the sureties only upon the special bond of Lowry are liable for the default is also, we think, not to be supported, because the statute expressly de-

clares it to be a cumulative security, and undoubtedly the legislature may so provide. Therefore, if cumulative, it does not affect the liability of Lowry or Johnson on the bond here sued on. If its execution should operate to make the sureties on it jointly liable with the sureties of Lowry's general bond, the most it could affect would be to give the sureties on each bond, if paid by the sureties of one bond only, a right of contribution against the sureties not sued or not paying.

3. The effort of Johnson to throw the burden of his suretyship on the official bond of Lowry for the second term of office as chancery clerk must fail also, because Lowry had no successor in the administration of the funds of the Ward estate, as all the proceedings and the final decree relating to its distribution were made during Lowry's first term of office. That Johnson is legally liable for the entire default, we think, is supported by authority. The default of Lowry (there being no proof on the subject) must be presumed to have occurred during the first term, because it was then received and ordered to be paid out. He never received the money as his successor. He had no successor as to this money. "The obligation to hold and pay the money to the party entitled to it, when called for, is incurred when the money is received, and, if not so paid over, without other proof, the bond then in force is responsible." *Morgan* v. *Smith*, 95 N. C., 396, 403; Thomp. Pub. Off., sec. 217; *Higginbottom* v. *Watt*, 23 Ark., 304; *Dabney's Adm'rs* v. *Smith's Legatees*, 5 Leigh, 13; note to *Crawn* v. *Com.*, 10 Am. St. Rep., 845; s.c., 6 S. E., 620.

*Affirmed.*